Argued and submitted February 17, reversed and
remanded for reconsideration June 27, 1984

## MORRISON,
*Petitioner,*

*v.*

## UNIVERSITY OF OREGON HEALTH
## SCIENCES CENTER et al,
*Respondents.*

(CA A26684)

685 P2d 439

William D. Schaub, Portland, argued the cause for petitioner. With him on the brief were James A. Fitzhenry, and Bauer, Winfree, Anderson, Fountain & Schaub, P.C., Portland.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondents. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YONG, J.

■■  Petitioner seeks judicial review of an order[1] dismissing him as a student from the Oregon Health Sciences University School of Dentistry. The faculty's decision to dismiss petitioner for "lack of professional skills development and lack of adequate clinical performance" constitutes a discretionary action that revokes a student's privilege to attend the university and is therefore a "contested case" under ORS 183.310(2)(a)(B).[2] *Patton v. St. Bd. Higher Ed.*, 59 Or App 477, 651 P2d 169 (1982).[3] We reverse and remand for reconsideration, because the Academic Dismissal Hearing Committee considered factual information outside the hearing record in contravention of the school's guidelines and ORS 183.450(2).

Petitioner was notified by letter that

"* * * based upon the recommendation of the clinic committee, the faculty of the School of Dentistry at its regular meeting on July 7, 1982, voted to dismiss you as a regular dental student effective immediately. The cause for this dismissal is your 'lack of professional skills development and lack of adequate clinical performance.' "

---

[1] The order affirming the faculty decision to dismiss petitioner was issued by the Academic Dismissal Hearing Committee August 5, 1982. The Dean of the School of Dentistry affirmed the order August 13, 1982. The President of the Oregon Health Science University denied review October 12, 1982.

[2] ORS 183.310(2)(a)(B) provides:

"(2)(a) 'Contested case' means a proceeding before an agency:

"* * * * *

"(B) Where the agency has discretion to suspend or revoke a right or privilege of a person;

"* * * * *"

[3] We have jurisdiction based upon the following statutes. ORS 183.480(1) provides:

"Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form. A petition for rehearing or reconsideration need not be filed as a condition of judicial review unless specifically otherwise provided by statute or agency rule."

ORS 183.482(1) provides:

"Jurisdiction for judicial review of contested cases is conferred upon the Court of Appeals. * * *

The letter quoted faculty policy section 202.1 and section C.2 of the student guide entitled, "The Protection of Students' Rights through Due Process on Academic Matters," which provides:

"[A] student may be dismissed or suspended from school if he/she fails to exhibit reasonable professional development and behavior irrespective of his or her numerical scholastic standing."

Pursuant to school rules, an academic dismissal may be initiated for two reasons. It is automatic if a student fails to maintain the prescribed numerical scholastic standing. The second basis for dismissal, applied in this case, is the failure to "exhibit reasonable professional development and behavior." After receiving notice of his dismissal, petitioner exercised his right to a hearing. Pursuant to school rules, an Academic Dismissal Hearing Committee was appointed, made up of four disinterested faculty members and one student. The committee was chaired by Dr. Mahler and included Drs. Gutweniger and Hartleb, Ms. Prondecki and Mr. Madden.[4] The hearing was held with petitioner and his attorney present. According to school procedures the committee then met in a closed meeting to review the evidence and make a decision. Petitioner argues that he should be granted a new hearing, because relevant information discussed in the closed session was not part of the record of the hearing. ORS 183.450(2) requires that in contested cases:

"All evidence shall be offered and made a part of the record in the case, and except for matters stipulated to * * * no other

---

[4] School rules provide:

"Faculty members or students in the respective pools who are directly or indirectly involved in the issues to be resolved in a hearing will not be eligible for appointment to the hearing committee. (For example, faculty members in the department responsible for teaching a course failed by the student cannot serve on the hearing committee.)"

Petitioner contends that this rule was violated by the faculty's appointment of Dr. Hartleb, who was a clinical instructor of operative dentistry. In denying petitioner a rehearing, the Dean determined that Dr. Hartleb was not a member of the clinic committee nor a member of the department that failed Mr. Morrison. We cannot determine from this record whether Dr. Hartleb is a faculty member in the respective pool who is "directly or indirectly involved in the issues." In any event, petitioner did not object to the appointment of Dr. Hartleb, even though he was notified of his right to make such an objection.

factual information or evidence shall be considered in the determination of the case. * * *"

Similarly, the student guide provides: "The hearing committee will do the following: (a) review and evaluate only the evidence and information presented at the hearing."

The criteria for dismissal for failure to exhibit reasonable professional development and behavior are set forth in the student guide:

"—critical judgment, accomplishment and quality of work. —patient management skills and demonstration of professional responsiblity. —initiative, perseverance and dedication in matters related to his or her education and patient care. —interpersonal relationships with other members of the health team. —self-improvement and adaptability. —ability to obtain, organize and analyze. —neatness in appearance and personal hygiene."

We review the comments made during the closed session to determine whether evidence relevant to the criteria for dismissal that is not part of the record of the hearing was discussed in the closed session. Dr. Cowan, who was not a member of the hearing committee, asked questions concerning the decision to bar petitioner from completing a summer clinical course. Dr. Mahler stated:

"Well, that point bothered me a little bit and I checked with both Clinton and Bill Howard on this, but apparently what happened was that, okay, he got the F, he got the notice that he would have to complete supplemental to remove that F either with a 0 or a 1 at the end of summer term. He was registered in summer term as a student, so having gotten his dismissal action, he was still in a special student status and continued in his courses and courses being general, clinical or whatever, he could continue his courses until this hearing was held. So that, you might say, legally he still could have continued on to remove that F and taken other courses and so forth up until today, or whatever action there was. However, Jack Clinton got into the act, apparently Morrison was a little bit unsure of whether he really wanted to appeal or not, and he spoke to Clinton and, according to Jack, Morrison was still unsure of whether he wanted to continue. He thought maybe this wasn't his field. He was uncertain as to where he was. And at that time, and I have a memo that Jack wrote to the Clinical Department that Mr. Morrison's patients would be

rescheduled and so forth. So that action was taken to, basically, taken out of the clinic as a sort of an ad hoc type of situation."

Dr. Cowan later remarked:

"I really should try to set the record straight like Bob Bruckner did, he [petitioner] got very defensive and instantly opened his mouth for the first time. I can assure you that I wouldn't, I couldn't and I didn't say any of those things to him in the clinic. Yes, he was working on a patient and when I took him the letter down, and of course I was just the marshal delivering the warrant, but I said, you know, would you come and I need you to sign that you have received this. He said, well, should I read it? I said, it's up to you, but I need you to sign this receipt for the letter. And he said, fine. So he signed the receipt and then he proceeded to say, what does this have to do with? And I said it has to do with, well, it says in the letter, being very careful to know the patient is sitting right there. And so he says it has to do with dismissal! And, you know, I did not jump forth and say, no, it has not, so he said can we go over here and talk? I said, certainly. So then we went over behind the thing and I did not make any suggestion to him that he could continue working in the clinic. What authority would I have to do such a thing? And so I said you know, it says on there effective immediately, it is a part of that dismissal notice. And so he says, well what should I do? And I said, I think you should see Dr. Bruckner. Now what is meant to happen to his patient, I don't know. And I think, if he left this patient hanging, while this goes on, it is tangible evidence of probably what the problem is that he's dealing with, that his priorities are somewhere else * * *."

Dr. Gutweniger asked Mr. Madden:

"Paul, how do you feel he gets along with his fellow students?

"Mr. Madden: I think John is kind of a loner.

"Dr. Gutweniger: I've heard several students say, since the dismissal, that they were kind of happy for his sake. Now, this is what they told me. They said it's a good thing for John. He probably was in the wrong profession. He was just too nice a guy to (unintelligible). I don't hear things as accurately as you would hear them, you know, they talk a little different to me.

"Mr. Madden: I haven't been around at all this summer since this thing came up and I didn't know him before.

"Dr. Hartleb: "A very interesting observation is, Dr. Clinton had quite a session with Mr. Morrison after he received this letter, and Dr. Clinton, of course, did not say very much about that conversation to me, but he did say that after he had finished, he said John, John Morrison is a fine person. And he's not a failure, he just happens to be in the wrong profession and he's expressed that to Mr. Morrison and at the end of that conversation, John Morrison actually smiled, let out a sigh of relief, and Dr. Clinton said that's the first time I've seen you smile since you've been in this building. He just glowed. Went out through Dr. Clinton's door and took the stairs up to the second floor lounge three at a time. And that's not like John Morrison. Seems like a weight had been taken right off of his shoulders, at that particular point in time. Just to relieve him of the responsibility of having to deal with people at that particular moment, he seemed to find himself. At least with a smile and a little energy. A tough situation."

Dr. Mahler then proposed a vote on the motion to uphold the faculty decision to dismiss.

In contrast to the remarks of Dr. Cowan, petitioner testified at the hearing that, when he received the faculty dismissal letter, he was working on a patient and stated, "I had to dismiss her because Dr. Cowan told me that, Dr. Cowan told me I better go talk to Dr. Bruckner and get the ball rolling for the appeal." The testimony and exhibits introduced at the hearing centered on petitioner's lack of hand/eye coordination and problems identifying caries as well as "heavy handedness" with patients. This evidence is relevant to the student's "clinical judgment, accomplishment and quality of work." Evidence introduced at the hearing concerning petitioner's "initiative, perseverance and dedication in matters related to his * * * education and patient care" was positive. Concerning his initiative and dedication, petitioner repeatedly testified that what he really wanted was to be a dentist and that he enjoyed working with patients.

Dr. Clinton did not testify at the academic dismissal hearing, and there is no other evidence in the record concerning a conversation between Dr. Mahler and Dr. Clinton. Dr. Mahler's statements concerning his conversation with Dr. Clinton were relevant to the question of petitioner's initiative and dedication in matters relating to his education and patient care in that Dr. Clinton related that petitioner was

unsure of whether he wanted to continue or whether dentistry was his field. Dr. Cowan's statements were clearly inappropriate, because he was not a member of the hearing committee. In addition, he attributed to petitioner some lack of priority when he left a patient once he was served with the dismissal letter. Again, this is relevant to petitioner's "dedication in matters related to patient care." Finally, the interchange between Dr. Gutweniger, Mr. Madden and Dr. Hartleb was inappropriate, because Dr. Gutweniger asked another member of the committee, Mr. Madden, to comment on matters not in the record, specifically, whether or not petitioner gets along with fellow students, and because Dr. Hartleb again commented on a conversation outside the record with Dr. Clinton. The gist of his statement is that dismissal was actually a relief to petitioner. Again, this comment is relevant to petitioner's initiative, perseverance and dedication, but outside the proper record.

ORS 183.482(7) provides in part:

> "The court shall remand the order for further agency action if it finds that either the fairness of the proceeding or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure."

We find that the committee erred materially in discussing matters not in the record, particularly when such discussion included a nonmember of the committee. The entire purpose of a hearing is undermined when relevant factual information is discussed and considered for the first time in a closed session without the opportunity for objection or response. Although there is substantial evidence to affirm the correctness of the result, the statute requires us to remand if *either* the fairness of the proceedings *or* the correctness of the action may have been impaired. Because we find that the inclusion of the quoted comments may have impaired the fairness of the hearing, we must remand.[5]

---

[5] Petitioner's other assignments of error do not require discussion, except for his contention that the school's rules governing academic dismissal should have been enacted pursuant to the Administrative Procedures Act. The school's rules concerning academic dismissal fall within an exemption provided by ORS 351.072, which provides in pertinent part:

Reversed and remanded for reconsideration.[6]

> "(1) Notwithstanding ORS 183.310 to 183.550, the following actions may be taken by the State Board of Higher Education or the educational institutions under its control without compliance with the rulemaking provisions of ORS 183.310 to 183.550:

> "(a) Adoption of standards, regulations, policies or practices by any of the educational institutions under the control of the State Board of Higher Education relating primarily to admissions, academic advancement, classroom grading policy, the granting of academic credits, granting of degrees, scholarships and similar academic matters."

The guidelines concerning academic dismissal are "similar academic matters" as rules concerning academic advancement, grading policy and granting of degrees. ORS 351.072(2) requires that such standards be in writing and be made available to interested persons on request. The school has complied with ORS 351.072(2).

[6] By this disposition, we do not mean to imply that the school may not, if it chooses, conduct a new hearing.