Argued and submitted February 9, reversed and remanded for further proceedings
July 11, petition for review denied October 24, 2001 (332 Or 632)

## Heidi SMITH, D.V.M.,
### *Petitioner,*

*v.*

## VETERINARY MEDICAL EXAMINING BOARD,
### *Respondent.*

## G60143; A109656

27 P3d 1081

Lawrence W. Erwin argued the cause and filed the brief for petitioner.

Mary Hazel Williams, Assistant Solicitor General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioner is a veterinarian who seeks judicial review of an order of the Oregon Veterinary Medical Examining Board (Board). The Board's order suspended her professional license for one year for professional misconduct under ORS 686.150(1). Petitioner contends, in one of multiple assignments of error, that the Board erred in relying on evidence that was submitted after the record of the hearing was closed, evidence that petitioner did not have an opportunity to rebut. We reverse and remand on that ground.

Petitioner has been a licensed veterinarian since 1981. In the first incident on which the Board based its suspension order, petitioner performed two blood draws on a horse, charged the client for the service, the cost of testing the blood, and shipping costs, and then failed to obtain the results of the tests from the lab or ensure that the client received the results. When confronted by the client, petitioner refunded the portion of the fee that represented the actual lab work but did not refund the portion that represented her labor and her shipping costs. The Board determined that her conduct constituted "charging for services not rendered," which is a violation of OAR 875-010-0060(11). Petitioner defended on the ground that she had performed the blood draws and mailed the blood, albeit to the wrong address, and that she therefore provided all of the services for which she charged.

In the second incident that formed the basis for the Board's order, petitioner administered an injection of vitamin E and selenium to a horse without having the drug epinephrine available to counter any possible adverse reaction. The horse died of shock from an allergic reaction to the injection, which might have been prevented had petitioner quickly administered epinephrine. The agency asserted that the failure to have epinephrine available during the injection constituted gross negligence. Petitioner defended on the grounds that she had administered an injection of corticosteroid, which is listed in the manufacturer's instructions as a drug that might also have counteracted the reaction, that she had believed the client had epinephrine available and that her conduct did not constitute gross negligence.

Based on allegations of the above conduct, the Board initially issued a notice of proposed suspension of petitioner's license. Petitioner requested a hearing, which was held on December 18, 1998. At that hearing, petitioner and the Board presented testimony and exhibits. Petitioner's credibility became a pivotal issue. Petitioner and the client whose horse had died disagreed on several factual assertions made by petitioner. Shelly Brown, a neighbor of the client, had allegedly witnessed several events about which petitioner and the client disagreed. Petitioner wanted to call Brown as a witness. The hearing officer attempted to call Brown to procure her testimony telephonically, but Brown did not answer her phone despite repeated calls. The Board also contemplated calling a rebuttal witness on a different matter but decided to submit that testimony by affidavit instead. At the close of the hearing, knowing that there was to be at least one additional affidavit submitted by the Board, the hearing officer set a deadline of December 28 for receipt of all additional evidence. She emphasized to the parties that all additional evidence had to be received by December 28 to be included in the record, that the parties could file objections or comments on any of that additional evidence until January 4, 1999, and that closing arguments were due by January 22, 1999.[1]

On December 23, 1998, the Board received a letter from Brown, stating that she deliberately did not testify at the hearing because she was unsure as to the truth of one of petitioner's assertions. She also mentioned in her letter that petitioner had contacted her and repeatedly urged her to testify favorably to petitioner about that fact, despite her lack of certainty. The Board submitted the letter to the hearing officer on January 4, 1999, and also mailed a copy to petitioner. The record does not indicate that the hearing officer reopened the record to include the letter or in any way considered the letter.

---

[1] The hearing officer said:

"Okay. Just to summarize so that there's no confusion or misunderstanding. Initial deadlines for additional exhibits, the initial deadline for initial exhibits is December 28. January 4 is the deadline for responses to those additional exhibits, whether objections or comments in writing. And finally, a deadline of January 22 for written concluding arguments."

Petitioner submitted her closing argument on January 19, 1999. The Board asked for and received an extension of time for its closing arguments, which it filed on January 28. In March 1999, the Board moved to have the record reopened so that an additional allegation against petitioner could be made a part of the same disciplinary action. In August 1999, the Board withdrew its request to add the other allegation and requested that the record be reclosed. In September 1999, the hearing officer issued a proposed order in favor of petitioner. In November 1999, the Board asked that the proposed order be withdrawn on the ground that the tapes of the hearing could not be transcribed[2] and stated that it would schedule a new hearing. The hearing officer declined to withdraw the proposed order. Apparently after reviewing the transcripts *de novo*, the Board then issued a final order concluding that petitioner was guilty of professional misconduct. The Board's order recites that it considered the Brown letter, and it expressly found petitioner not credible based in part on the contents of the letter. Based on its findings and conclusions, the Board suspended petitioner's license.

Petitioner argues that the Board's consideration of the letter was improper because the hearing record was closed before the letter was submitted and because the record was never reopened for its admission. The Board responds that "[a]lthough the hearing officer set December 28, 1998, as the initial deadline for the submission of additional evidence, the record did not close on that day." Alternatively, it contends that there are no administrative rules in place that regulate the receipt of evidence after the date a hearing has closed and that the test should be whether admission of the evidence was fair and whether petitioner had an opportunity to respond to the letter. It asserts that petitioner could have responded to the letter in her closing argument or could have moved to reopen the record to submit rebuttal evidence.

■ ORS 686.135 provides that, "[w]hen the Oregon State Veterinary Medical Examining Board proposes to * * * discipline any permit or license holder in accordance with the provisions of ORS 686.150, opportunity for hearing shall be

---

[2] The transcriber's certificate shows that the hearing was in fact transcribed on October 27, 1999.

accorded as provided in ORS 183.310 to 183.550."[3] ORS 183.450 provides, in part:

"(1)  * * * Objections to evidentiary offers may be made and shall be noted in the record.

"* * * * *

"(2)  *All evidence shall be offered and made a part of the record in the case,* and except for matters stipulated to and except as provided in subsection (4) of this section *no other factual information or evidence shall be considered in the determination of the case.* Documentary evidence may be received in the form of copies or excerpts, or by incorporation by reference. The burden of presenting evidence to support a fact or position in a contested case rests on the proponent of the fact or position.

"(3)  *Every party shall have the right of cross-examination of witnesses who testify and shall have the right to submit rebuttal evidence.* Persons appearing in a limited party status shall participate in the manner and to the extent prescribed by rule of the agency." (Emphasis added.)

ORS 183.415 also provides, in part:

"(9)  The officer presiding at the hearing shall place on the record a statement of the substance of any written or oral ex parte communications on a fact in issue made to the officer during the pendency of the proceeding *and notify the parties of the communication and of their right to rebut such communications.*

"* * * * *

---

[3] Contrary to petitioner's assertions, this case is not governed by the central hearing panel statutes that are also located in ORS 183.310 to ORS 183.550. For cases that were pending as of the effective date of the 1999 amendments to ORS 183.310 to ORS 183.550, which was January 1, 2000, unless there is an agency request to transfer the case to the hearing officer panel, the case continues under the framework provided in ORS 183.310 to ORS 183.550. Or Laws 1999, ch 849, §§ 2 to 21. See Section 18, which provides, "On the operative date of sections 2 to 21 of this 1999 Act [January 1, 2000], the chief hearing officer for the Hearing Officer Panel shall assign hearing officers *as requested by agencies* to continue the conduct of and conclude proceedings pending on the operative date of sections 2 to 21 of this 1999 Act." Or Laws 1999, ch 849, § 18 (emphasis added).

"(12)    A verbatim oral, written or mechanical record shall be made of all motions, rulings and testimony." (Emphasis added.)

In addition, OAR 137-03-050 (1991) applies to this case.[4] It provides, in part:

"(3)    All offered evidence, not objected to, will be received by the presiding officer subject to the officer's power to exclude irrelevant, immaterial, or unduly repetitious matter.

"(4)    Evidence objected to may be received by the presiding officer. *Rulings on its admissibility or exclusion, if not made at the hearing, shall be made on the record* at or before the time a final order is issued." (Emphasis added.)

OAR 137-03-055 (1991) is also relevant. It provides:

"(1)    An ex parte communication is an oral or written communication to an agency decision maker or the presiding officer not made in the presence of all parties to the hearing, concerning a fact in issue in the proceeding, but does not include communication from agency staff or counsel about facts in the record.

"(2)    *If an agency decision maker or presiding officer* receives an ex parte communication during the pendency of the proceeding, *the officer shall*:

"(a)    Give all parties notice of the substance of the communication, if oral, or a copy of the communication, if written; and

"(b)    *Provide any party who did not present the ex parte communication an opportunity to rebut the substance of the ex parte communication at the hearing*, at a separate hearing for the limited purpose of receiving evidence relating to the ex parte communication, or in writing.

---

[4] OAR 137-03-050 (1991) is part of the Attorney General's Model Rules of Procedure for Contested Cases. OAR 137-03-000 provides that an agency that does not use a hearing officer from the Hearing Officer Panel may adopt all or any of the Model Rules. The Board has done so expressly. *See* OAR 875-001-0005 ("The Veterinary Medical Examining Board adopts in its entirety the Attorney General's Model Rules of Procedure under the Administrative Procedure Act, bearing the effective date of November 4, 1991."). For the sake of consistency with the published rules, we employ the numbering convention of the 1991 rules even though the rules have since been numbered differently.

"(3) The agency's record of a contested case proceeding shall include:

"(a) The ex parte communication, if in writing;

"(b) A statement of the substance of the ex parte communication, if oral;

"(c) The agency or presiding officer's notice to the parties of the ex parte communication; and

"(d) Rebuttal evidence." (Emphasis added.)

We turn first to the Board's argument that the record was not closed before the Brown letter was submitted. ORS 183.450(2) requires that all evidence considered by the factfinder shall be made a part of the record in the case and that no other factual information be considered. The Board's cover letter to the hearing officer dated January 4 states, among other things, "Please accept this letter [the Brown letter] as a supplemental Board exhibit." However, the time for the submission of additional evidence expired six days before the Brown letter was submitted, with the cover letter offering it as an exhibit. Under ORS 183.415(12), the letter could not have become part of the record without a ruling by the hearing officer on the record as to its admissibility. There is no ruling in the record that the hearing was reopened, nor is there a ruling that the letter was admitted as evidence. Consequently, ORS 183.450(2) and OAR 137-03-050 (1991) expressly prohibit the consideration of the Brown letter.

■ Nonetheless, the Board considered the letter in its fact-finding capacity even though it was not part of the record and the record was not reopened for its receipt. In *Groshong v. Montgomery Ward Co.*, 73 Or App 403, 698 P2d 998 (1985), we considered a similar problem. There, an order of the Workers' Compensation Board relied on evidence presented to the hearing officer by the agency but not made part of the evidentiary record. The Board incorporated part of the "Dictionary of Occupational Titles" into its order, although the dictionary had not been received by the agency or offered as evidence at the hearing. We said:

" 'The vice of receiving these "facts" as evidence outside of the hearing is that it deprives petitioner of an opportunity

to challenge them. Without presentation at a hearing, petitioner has no way of showing that these facts—which carry much weight—either are not well founded or are not relevant to his case for some distinguishing reason.' " *Groshong*, 73 Or App at 408, *quoting Rolfe v. Psychiatric Security Review Board*, 53 Or App 941, 950-51, 633 P2d 846, *rev den* 292 Or 334 (1981).

We also said:

" '[E]xclusiveness of the record is at the core of the right to a fair hearing. Without that principle the hearing itself can be but a sham. * * * The hearing itself becomes only an administrative town meeting rather than the adversary proceeding required by due process.' " *Groshong*, 73 Or App at 408, *quoting* B. Schwartz, *Administrative Law*, 358 (1976).

Similarly, the Psychiatric Security Review Board in *Rolfe*, 53 Or App at 941, relied on evidence outside the record. That evidence consisted of memoranda submitted by two members of the Board about their perceptions of the future dangerousness of the petitioner. We examined the limitations on the Board's consideration of evidence that were imposed by ORS 183.450(2) and (4), and concluded, "[S]ince the fact recited does not appear in the hearing record and was not formally noticed, it was not proper for the board to consider it." *Id.* at 950. As we said in *Groshong*, those principles apply to any agency's review of the record.

■    An agency must comply with the statutes that govern it and follow its own rules. As we held in *Groshong* and in *Rolfe*, the observance of procedural and evidentiary standards plays an important role in ensuring a fair consideration of contested fact issues. Here, it is apparent that the Board's findings turned in large part on its assessment of petitioner's credibility. The Board's failure to comply with the applicable statutes and rules that govern its hearings in contested cases resulted in a determination based on evidence that was not part of the record and that petitioner had no opportunity to rebut with her own evidence. We perceive no burden on petitioner under the applicable statutes and rules to respond to a letter that had not been properly received into the record. If the test is "fairness," as the Board suggests, petitioner had no notice that the letter had been included in

the record nor an opportunity to rebut it with evidence. On remand, the Board must consider only the record properly before it in reaching its determination of whether petitioner's license should be suspended.

Reversed and remanded for further proceedings consistent with this opinion.