Argued and submitted July 7, 2011, affirmed May 9, petition for review denied November 8, 2012 (352 Or 665)

## LUIS A. LOPEZ,
*Petitioner-Appellant,*

*v.*

## Don MILLS,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV071272; A140640

278 P3d 94

Michael R. Levine argued the cause appellant. With him on the briefs was Levine & McHenry LLC.

Ryan P. Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

Petitioner appeals the post-conviction court's judgment, which granted him relief, but not the relief he requested. Petitioner argues that, because the state breached its agreement to recommend that he be paroled, the court had to order that he be released on parole or that his conviction be vacated. According to petitioner, the court's chosen relief—an order that the state make the agreed-upon recommendation at a new parole hearing—was inadequate because it did not give him the benefit of the agreement. For the reasons explained below, we disagree and, therefore, affirm.

The relevant facts are procedural. In 1986, petitioner was charged with aggravated murder, first-degree rape, and first-degree sodomy for crimes committed in 1985. The state sought the death penalty.

Before trial, petitioner and the state reached an agreement. Petitioner agreed to be tried based on stipulated evidence; as the prosecutor told the trial court, petitioner agreed to stipulate that he was "guilty of each and every element" of aggravated murder. In exchange, the prosecutor agreed to move to dismiss the remaining counts and not to pursue a death sentence. The parties agreed that petitioner would be sentenced to life imprisonment and confined for a minimum of 30 years without the possibility of parole, pursuant to ORS 163.105(1) (1985).[1] They further agreed that

---

[1] Throughout this opinion, we refer to the 1985 version of ORS 163.105, the aggravated murder sentencing statute, because that version was in effect when petitioner committed his crime. ORS 163.105 (1985) provides, in part:

"(1) When a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced to death or life imprisonment pursuant to [ORS 163.150 (1985)]. If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(2) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *

"(3) If, upon hearing all of the evidence, the board, upon a unanimous vote of all five members, finds that the prisoner is capable of rehabilitation and that

the prosecutor would send a letter to the parole board affirmatively recommending that petitioner be paroled after serving 20 years,[2] as permitted by ORS 163.105(2). In accordance with the agreement, petitioner was tried based on the stipulation, was convicted of aggravated murder, and was sentenced to life imprisonment, with a minimum term of confinement of 30 years, pursuant to ORS 163.105(1).

As petitioner neared the completion of 20 years in prison, the parole board scheduled a parole hearing to determine whether to change petitioner's sentence from life without the possibility of parole to life with the possibility of parole, pursuant to ORS 163.105(3).[3] The hearing was initially scheduled for January 2006. In October 2005, petitioner sent a letter to the prosecutor, who still worked at the district attorney's office, asking that he send the agreed-upon letter to the board for consideration at the upcoming hearing. No one from the district attorney's office responded. The hearing was rescheduled. In March 2006, petitioner's attorney wrote to and telephoned the prosecutor, again asking

---

the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise the board shall deny the relief sought in the petition."

[2] The prosecutor's agreement to recommend that petitioner be paroled after serving 20 years in prison was recorded in petitioner's written "stipulated facts" agreement, which states:

"The defendant shall be sentenced to life imprisonment on the charge of Aggravated Murder, and ordered confined for a minimum period of thirty (30) years; however, the District Attorney shall affirmatively recommend, via letter to the Parole Board, that defendant be paroled after serving a term of twenty (20) years[.]"

(Underscoring in original.)

[3] Hearings of that type are referred to as "murder review hearings." *See, e.g.,* *Larsen v. Board of Parole*, 231 Or App 59, 61, 219 P3d 28 (2009), *rev den*, 348 Or 13 (2010). The substantive standards in a murder review hearing are governed by the law in effect when the crime was committed, while the applicable procedures are established by the law in effect when the inmate requests the hearing. *Id.* at 61 n 1. Thus, substantive aspects of petitioner's hearings are controlled by ORS 163.105 (1985), which provides that, if the board concludes that a prisoner is "likely to be rehabilitated within a reasonable period of time," it shall enter an order that "shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release." ORS 163.105(2), (3) (1985). *See generally* *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010) (explaining the role of the parole board under ORS 163.105 (1985)).

that he send the agreed-upon letter to the board. Again, no one from the district attorney's office responded.

In April 2006, the parole board held the murder review hearing. Under ORS 163.105(2), the "sole issue" at the hearing was whether petitioner was "likely to be rehabilitated within a reasonable period of time." The record and briefing before the board reflected that the prosecutor had agreed to send a letter recommending that petitioner be paroled after serving 20 years, but the prosecutor had not sent the letter.[4] The board denied petitioner's request that his sentence be changed to life with the possibility of parole.

In March 2007, the Federal Public Defender for the District of Oregon wrote to the prosecutor to "bring the matter to [the prosecutor's] attention." In April 2007, the prosecutor wrote the agreed-upon letter to the parole board.

Petitioner subsequently filed the post-conviction relief petition in this case, alleging that the state's breach of the agreement constituted a violation of his rights under the state and federal constitutions. To remedy the breach, petitioner argued that the post-conviction court had to order that he be released on parole or, alternatively, that his conviction be vacated.

At the post-conviction trial, the state conceded that the prosecutor had breached the agreement and, therefore, petitioner was entitled to post-conviction relief, but it argued that the proper remedy for the breach was specific performance. Specifically, it argued that the court should order the prosecutor to submit a new letter to the parole board recommending that petitioner be paroled and order the board to hold a new parole hearing to consider the letter.

The post-conviction court rejected petitioner's argument that it should order the parole board to release him, concluding,

---

[4] The record reflected the prosecutor's obligation to send a letter because it included the stipulated facts agreement. Petitioner's attorney referred to the agreement, and his attempts to contact the prosecutor, in the briefing before the board.

"The [prosecutor's] recommendation would have certainly been one of the factors the board would have considered, but the board's role is not just to follow such a recommendation, but to consider the inmate's total conduct and to protect the public. * * * This court does not feel it appropriate to substitute its opinion for that of the board."

The post-conviction court did not address petitioner's argument that his conviction should be vacated. The court ordered the prosecutor to submit another letter recommending petitioner's release to the parole board and further ordered "that the [Attorney General] assist in scheduling a new parole hearing ASAP after the recommendation is submitted so that the board may consider all the evidence supporting release of [petitioner]."[5]

Petitioner appeals, arguing that specific performance was an inadequate remedy for the prosecutor's breach. According to petitioner, instead of ordering specific performance, the post-conviction court should have ordered either that he be paroled or that his conviction be vacated. Thus, the issue on appeal is not whether petitioner should have received post-conviction relief; it is undisputed that he should have and did. Rather, the issue is whether the post-conviction court's choice of remedy was erroneous.

As described, petitioner agreed to stipulate to the elements of aggravated murder and the prosecutor agreed to send a letter to the parole board recommending that petitioner be paroled after serving 20 years in prison. The agreement between petitioner and the prosecutor was, essentially, a plea agreement. Although petitioner did not plead guilty or no contest, he stipulated that he was guilty of each and every element of the aggravated murder count. Therefore, we treat the agreement as a plea agreement.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise

---

[5] Petitioner informs us that, in accordance with the post-conviction court's order, the prosecutor submitted a new letter recommending that petitioner be released and the parole board held a new hearing in June 2009. The board denied petitioner's request that his sentence be converted to life with the possibility of parole.

must be fulfilled." *Santobello v. New York*, 404 US 257, 262, 92 S Ct 495, 30 L Ed 2d 427 (1971); *see also Stone v. OSP*, 39 Or App 473, 476, 592 P2d 1044 (1979) ("Failure to scrupulously observe a plea bargain is cause for post-conviction relief[.]"). If the prosecutor does not fulfill such a promise, the petitioner is entitled to post-conviction relief regardless of whether the breach prejudiced the petitioner. *Santobello*, 404 US at 262-63 (holding post-conviction relief appropriate although the trial court "stated that the prosecutor's [sentencing recommendation, which was the source of the breach,] did not influence him and we have no reason to doubt that"); *Stone*, 39 Or App at 476 (holding that, where the prosecutor breached the plea agreement by making an improper recommendation at sentencing, the breach merited post-conviction relief "even where the sentencing court was uninfluenced by the irregularity"). The form of relief depends on the circumstances of the case. *Santobello*, 404 US at 263 ("The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.*, the opportunity to withdraw his plea of guilty.").

A post-conviction court has broad authority and discretion to craft remedies. ORS 138.520 (post-conviction court may order or grant "release, new trial, modification of sentence, and such other relief as may be proper and just"). In general, a post-conviction court may remedy the state's violation of a plea agreement either by ordering specific performance or by allowing the petitioner to withdraw his plea. *Santobello*, 404 US at 263; *Stone*, 39 Or App at 476; *Stewart v. Cupp*, 12 Or App 167, 173, 506 P2d 503 (1973); *cf. United States v. Dicus*, 579 F Supp 2d 1142, 1155-56, 1158 (N D Iowa 2008) (reducing the defendant's sentence where neither specific performance nor withdrawal of the guilty plea provided an adequate remedy for the prosecutor's breach of the plea agreement).

Whether a post-conviction court's chosen remedy is adequate is a question of law that we review for errors of law.

*See Stone*, 39 Or App at 476. To be adequate, a remedy in a case involving a plea agreement breach by the state must provide the petitioner with the benefit of the agreement that led to the plea. *Id.*

Specific performance can be an adequate remedy for a plea agreement breach by the state in certain circumstances. *Stone* is illustrative. In *Stone*, the petitioner agreed to plead no contest to one charge and, in exchange, the prosecutor agreed to dismiss the other charges and to recommend "incarceration." *Id.* at 475. As the petitioner understood the agreement, the prosecutor would recommend incarceration, but not a specific amount of incarceration. At sentencing, the prosecutor recommended 20 years of incarceration, the statutory maximum amount. The petitioner did not object to the recommendation, and the trial court sentenced the petitioner to 20 years. A year later, the petitioner filed for post-conviction relief, alleging that the prosecutor's recommendation violated the plea agreement. The post-conviction court found that the plea agreement included a promise by the prosecutor to recommend incarceration, but not a specific amount of incarceration, and that the prosecutor had broken that promise. As a remedy, the court vacated the petitioner's plea.

The state appealed, arguing that vacation of the petitioner's plea was not an appropriate remedy under the circumstances. According to the state, the appropriate remedy was specific performance, that is, vacation of the petitioner's sentence and remand for resentencing by a different judge following a recommendation by the prosecutor consistent with the agreement. We agreed. *Id.* at 476.

We concluded that specific performance was an adequate remedy; it would provide petitioner the benefit of his bargain. We explained, "There is no unfairness to the petitioner in maintaining his plea if he is able to receive the benefit of the agreement which led to the plea." *Id.*

We further concluded that, because specific performance was an adequate remedy, the post-conviction court erred in vacating the petitioner's plea. We explained,

"[V]acation of a regularly entered plea of no contest after passage of a substantial period of time would not be fair to

the state. The petitioner made no objection to the recommendation at the sentencing hearing. That was a tactical decision by defense counsel who, she testified, did not believe it would be advantageous to the petitioner to do so. The petition for post-conviction relief was filed a year later. With the passage of time, staleness of the case and unavailability of witnesses can become an even greater problem for the prosecution, which has the primary burden of proof, than for the petitioner. It is therefore not fair to needlessly force the state to a trial it was ready to prosecute over two years ago if an alternative means of enforcing the agreement is readily available."

*Id.* at 476-77 (citation omitted). Because "[s]uch a means [was] readily available," we held that the petitioner's "sentence should be vacated and the case remanded to the original circuit court for the imposition of sentence by a different circuit judge following a recommendation by the prosecutor * * * consistent with the plea agreement." *Id.* at 477. Thus, *Stone* establishes that, if the state breaches a plea agreement by failing to make an agreed-upon recommendation at a hearing, the breach can be remedied if the state makes the agreed-upon recommendation at a new hearing that is untainted by the breach. *Stone* also establishes that, if multiple adequate remedies are available to cure the harm suffered by the petitioner, it is error for a court to choose a remedy that would unfairly prejudice the state.

In this case, petitioner argues that specific performance is an inadequate remedy for two reasons. First, he argues that it is simply too late for him to get the benefit of his agreement through a new letter and new hearing. He asserts, "To order a new parole hearing and a new letter from [the prosecutor], as the [post-conviction] court did, was not an adequate remedy because it was not what petitioner had bargained for 20 years earlier. He bargained for the letter at the end of 20 years to be used at the initial parole hearing[.]"

That argument is unavailing because, as we held in *Stone*, in some circumstances, a breach at one hearing can be remedied by a new hearing. The fact that a party has violated an agreement to perform at a particular time does not necessarily mean that an order to perform at a later time is an

inadequate remedy. In many cases where a court orders specific performance, the ordered performance is overdue. Indeed, in *Stone*, even though the petitioner was entitled to have the prosecutor make the agreed-upon recommendation at his first sentencing hearing, we held that specific performance—in the form of a second sentencing hearing ordered two years after the first—was an adequate remedy. Similarly, in this case, petitioner was entitled to the prosecutor's agreed-upon recommendation at his first parole hearing, but that fact, in and of itself, does not mean that specific performance—here, in the form of a second parole hearing ordered two and one-half years after the first—was an inadequate remedy.

Second, petitioner argues that specific performance cannot provide him with the benefit of his bargain because the new letter and new parole hearing will be less valuable than those for which he bargained. He argues that the parole board could infer, from the fact that the prosecutor failed to send the agreed-upon letter on time, that the prosecutor did not want to send the letter and that inference could undercut the persuasive value of any new letter.

Essentially, petitioner's second argument is that any new hearing would be tainted by the prosecutor's breach. We disagree. The post-conviction court ordered a new hearing to replace the first one. At the new hearing, the board had to proceed as if the prosecutor had complied with the agreement. The prosecutor's breach could play no role in the board's decision. As courts and agencies are regularly called upon to do, the board had to set aside any information that should not have been in front of it at the first hearing and make a new decision, independent of its first decision, based solely on the information properly before it at the new hearing. *See Peek v. Thompson*, 160 Or App 260, 266, 266 n 7, 269, 980 P2d 178, *rev dismissed*, 329 Or 553 (1999) (remanding to the parole board to reconsider its decision to defer a prisoner's release after the court concluded that the board had applied the wrong legal analysis and, as a result, made its decision based on evidence that was not relevant); *cf. Smith v. Veterinary Medical Examining Board*, 175 Or App 319, 328, 27 P3d 1081, *rev den*, 332 Or 632 (2001) (remanding

where the Veterinary Medical Examining Board had improperly relied on a letter that was not in the record, and explaining that "[o]n remand, the Board must consider only the record properly before it in reaching its determination of whether [the] petitioner's license should be suspended"); *Morrison v. U. of O. Health Sciences Center*, 68 Or App 870, 872, 685 P2d 439 (1984) (remanding for reconsideration where "the Academic Dismissal Hearing Committee considered factual information outside the hearing record"); *Rolfe v. Psychiatric Security Review Board*, 53 Or App 941, 951-52, 633 P2d 846, *rev den*, 292 Or 334 (1981) (remanding for reconsideration where the Psychiatric Security Review Board had improperly relied on facts submitted by board members). In this case, we have no reason to believe that the board did not do that. In other words, we are not convinced that any taint from the prosecutor's breach was indelible.

Affirmed.