Submitted February 6, OAR 255-030-0013 and Exhibit NOR-1 held valid July 8, 2015

**PEPE GLENN RIVAS,**
*Petitioner,*

*v.*

**BOARD OF PAROLE AND POST-PRISON SUPERVISION,**
*Respondent.*

Board of Parole and Post-Prison Supervision
A154737

356 P3d 83

Pepe Glenn Rivas filed the briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Petitioner, a prisoner at Oregon State Correctional Institution, challenges as unconstitutional "Exhibit NOR-1,"[1] which is a notice of rights form that is part of the packet that the Board of Parole and Post-Prison Supervision provides to prisoners before conducting a parole-exit interview, as well as OAR 255-030-0013(1), which requires the board to provide Exhibit NOR-1 to prisoners. OAR 255-030-0013(1) ("The inmate shall receive a copy of the Board Review Packet, including the notice of rights (Exhibit NOR-1), at least 14 days prior to the [prison-term] hearing."); OAR 255-060-0006(2) ("The procedures for records, disclosure and notice outlined in Division 15 and 30 shall govern exit interviews."). Petitioner asserts that the part of Exhibit NOR-1 that provides that a prisoner "may not call witnesses or cross-examine anyone who provided information to the Board"[2] violates due process when the board postpones parole release under ORS 144.125(3)(a).[3] We conclude that

---

[1] Exhibit NOR-1 is an administrative rule of the board subject to a rule challenge under ORS 183.400 of the Administrative Procedures Act (APA). *Smith v. Board of Parole*, 250 Or App 345, 351, 284 P3d 1150 (2012). Following our conclusion in *Smith* that a notice of rights form was invalid for failure of the board to comply with rulemaking procedures, the board incorporated Exhibit NOR-1 into OAR 255-030-0013 through a formal rule amendment. Petitioner brought this rule challenge following that amendment and does not challenge the board's compliance with rulemaking procedures.

[2] Petitioner challenges the emphasized language below from Exhibit NOR-1:

"Information Considered at the Hearing

"The Board will consider the documents in the packet prepared for your hearing and provided to you. It is your responsibility to provide any other information you want considered. Please be aware that information you submitted for previous hearings will not automatically be considered by the Board for this hearing. You must resubmit any such information. The Board will not research and obtain information for you. *You may not call witnesses or cross-examine anyone who has provided information to the Board.*"

(Footnote and boldface omitted; underscoring in original; emphasis added.) Petitioner has challenged the June 18, 2012, version of Exhibit NOR-1. We note that the current version of Exhibit NOR-1, revised March 30, 2015, contains the identical paragraph.

[3] ORS 144.125 provides, in part:

"(1) Prior to the scheduled release of any prisoner on parole and prior to release rescheduled under this section, the State Board of Parole and Post-Prison Supervision may upon request of the Department of Corrections or on its own initiative interview the prisoner to review the prisoner's parole plan and psychiatric or psychological report, if any, and the record of the prisoner's conduct during confinement. * * *

the challenged portion of Exhibit NOR-1 does not violate due process and, thus, it and OAR 255-030-0013, which incorporates Exhibit NOR-1, are valid.

Our review in a rule challenge brought under ORS 183.400 is limited to an examination of "[t]he rule under review," "[t]he statutory provisions authorizing the rule," and "[c]opies of all documents necessary to demonstrate compliance with applicable rulemaking procedures." ORS 183.400(3). Accordingly, we will not consider the extra-record documents that petitioner has provided in an appendix to his opening brief. *Wolf v. Oregon Lottery Commission*, 344 Or 345, 355, 182 P3d 180 (2008). We may declare a rule invalid only if we conclude that the rule violates constitutional provisions, exceeds the agency's statutory authority, or was adopted without complying with rulemaking procedures. ORS 183.400(4). Petitioner proceeds only on due process grounds under the Fourteenth Amendment to the United States Constitution.[4]

"Procedural due process imposes constraints on governmental decisions that deprive individuals of constitutionally protected liberty or property interests." *Alexander v. Board of Parole*, 205 Or App 443, 451, 134 P3d 1055, *rev den*, 341 Or 449 (2006). In analyzing a due process claim, we must confront two issues: "The first issue is whether the state has deprived a person of a liberty or property interest within the meaning of the Due Process Clause. If it has, the second is what process is due." *Stogsdill v. Board of Parole*, 342 Or 332, 336, 154 P3d 91 (2007) (citing *Wilkinson v. Austin*, 545 US 209, 224, 125 S Ct 2384, 162 L Ed 2d 174 (2005)). With regard to the first inquiry, the Oregon Supreme Court in *Stogsdill* determined that the Oregon statutes put at issue by petitioner's challenge here—ORS 144.120 and ORS 144.125—create a protected liberty interest in early release

---

"*****

"(3)(a) If the board finds the prisoner has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community, the board may order the postponement of the scheduled parole release until a specified future date."

[4] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

from prison that the state may not deny without due process. *Id.* at 337. Thus, in this case, we address only the second inquiry—what process is due.

Under ORS 144.125(1), the board may conduct an exit interview with a prisoner in anticipation of the prisoner's early release date set under ORS 144.120. Under ORS 144.125(3)(a), the board may "order the postponement of the scheduled parole release until a specified future date," "[i]f the board finds the prisoner has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community." Based on that scheme, petitioner argues that a prisoner's due process rights are violated when the board postpones a parole release date based on ORS 144.125(3)(a) without giving the prisoner an opportunity to call witnesses or cross-examine people who have provided information to the board, particularly any psychiatrists or psychologists who have furnished a report to the board, because it denies the prisoner a "meaningful opportunity to be heard."

The board responds that petitioner's arguments are foreclosed by *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 US 1, 99 S Ct 2100, 60 L Ed 2d 668 (1979), *Swarthout v. Cooke*, 562 US 216, 131 S Ct 859, 178 L Ed 2d 732 (2011) (*Cooke*), and *Smith v. Board of Parole*, 268 Or App 457, 343 P3d 245 (2015). Under those cases, the board argues, Exhibit NOR-1 is valid because, in the circumstance of a parole-release hearing, the process to which a prisoner is entitled is minimal and does not require permitting a prisoner to call witnesses or cross-examine people who have furnished information to the board.

In *Cooke*, the United States Supreme Court addressed whether the respondents, two inmates in the California penitentiary system, were denied due process when they were both denied parole. In addressing the second part of the due-process inquiry—what process is due—the Court discussed whether the process the respondents were given was constitutionally sufficient:

> "When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication— and federal courts will review the application of those

constitutionally required procedures. *In the context of parole, we have held that the procedures required are minimal. In* Greenholtz, *we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied.* [442 US] at 16, 99 S Ct 2100. 'The Constitution,' we held, 'does not require more.' *Ibid.* [The respondents] received at least this amount of process: They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied."

*Cooke*, 562 US at 220 (emphasis added). Relying on that passage in *Cooke*, we concluded in *Smith* that "the ability to subpoena witnesses is not a requirement for a constitutionally adequate parole consideration hearing under ORS 144.228," which is a statute that provides for periodic parole review for "dangerous offenders." *Smith*, 268 Or App at 469; *see also Atkinson v. Board of Parole*, 341 Or 382, 390 n 9, 143 P3d 538 (2006) ("Even assuming that some due process requirements were applicable to the board [for a murder-review hearing under ORS 163.105 (1983)], the United States Supreme Court has held that parole release hearing procedures that prohibit a prisoner from hearing adverse testimony or cross-examining adverse witnesses do not violate due process principles."); *Maney v. Board of Parole*, 272 Or App 116, 355 P3d 146 (2015) (examining *Greenholtz*, *Cooke*, and *Stogsdill*, and concluding that due process does not require the board to grant a prisoner's request for a psychological evaluation in conjunction with a murder review hearing). Based on *Greenholtz* and *Cooke*, and our prior reliance on those cases in *Smith*, we conclude that the procedures to which prisoners are constitutionally entitled for a parole-exit interview do not include the ability to call witnesses or cross-examine people who have provided information to the board.

Petitioner attempts to distinguish *Greenholtz* and *Cooke* based on the Oregon Supreme Court's decision in *Stogsdill*. Petitioner argues that the liberty interest in early release under Oregon law is more significant than the liberty interests discussed in *Greenholtz* and *Cooke* and, thus, Oregon prisoners are entitled to more due-process

protections. Petitioner bases his argument on an excerpt from *Stogsdill* in which the Oregon Supreme Court analogized the significance of the liberty interest in early release to that in good-time credits discussed in *Wolff v. McDonnell*, 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974). Petitioner thus asserts that, at a minimum, Oregon prisoners are entitled to the same protections discussed in *Wolff*, which included the right to call witnesses. *See id.* at 566.

We disagree. First, the court's analogy to good-time credits was based on its understanding that, of the three related but separate liberty deprivations discussed by the United States Supreme Court—a criminal conviction, the revocation of parole, and the deprivation of good-time credits—the Court has recognized that "the deprivation of good time credits is the *least significant.*" *Stogsdill*, 342 Or at 338 (emphasis added). Based on that understanding, the court concluded that postponing a release date "is closer to the deprivation of good time credits than it is to the revocation of parole." *Id.* at 339. Second, the court further recognized that other factors demonstrated that the liberty interest in early release was of lesser significance than other types of interests, including because the stigma for criminal conviction is far greater than that arising from postponement of parole release under ORS 144.125(3), and the board's determination to postpone parole does not result in a permanent deprivation. *Id.* at 339-40. Finally, in concluding that due process did not require proof by clear and convincing evidence before postponing release under ORS 144.125(3), the court noted that "the significance of petitioner's private interest is diminished by the existence of a conviction that permits the state to hold him for the duration of his sentence." *Id.* at 342.

Based on the entirety of the court's discussion in *Stogsdill*, we conclude that the Oregon Supreme Court has not recognized a more significant liberty interest in early release under ORS 144.120 and ORS 144.125 than the United States Supreme Court has identified from the state statutes at issue in *Greenholtz* and *Cooke*. *See Greenholtz*, 442 US at 12, 14 (concluding that "the expectancy of release provided in [Nebraska's] statute is entitled to some measure of constitutional protection," but concluding that "[p]rocedures designed to elicit specific facts, such as those required

in * * * *Wolff* are not necessarily appropriate to a Nebraska parole determination"); *Cooke*, 562 US at 221 ("The liberty interest at issue here is the interest in receiving parole when the California standards for parole have been met, and the minimum procedures adequate for due-process protection of that interest are those set forth in *Greenholtz*."). Thus, based on *Greenholtz* and *Cooke*, we conclude that the ability to call witnesses or cross-examine people who have provided information to the board are not requirements for a constitutionally adequate parole-exit interview under ORS 144.125(3). Accordingly, we conclude that OAR 255-030-0013 and Exhibit NOR-1 are valid.

OAR 255-030-0013 and Exhibit NOR-1 held valid.