Submitted November 21, affirmed December 29, 2022, petition for review denied April 20, 2023 (371 Or 21)

JOHN PAUL SCHROEDER,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A175521

523 P3d 701

Petitioner seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision (the board). In that order, which the board issued after an exit interview, the board deferred petitioner's parole release date for 24 months; it found that petitioner suffers from a present severe emotional disturbance (PSED) that constitutes a danger to the health or safety of the community, so as to permit the deferral of petitioner's parole release date under ORS 144.125 (1977). On review, petitioner contends that (1) the board violated his rights under the *ex post facto* clauses of the state and federal constitutions when it applied OAR 255-030-0026—promulgated after his crimes of conviction—to permit two persons to make statements at his exit interview; (2) the board violated his due-process rights under the federal constitution when it permitted those persons to make statements at his exit interview without giving him advance notice; and (3) the board's finding that he suffers from a PSED is not supported by substantial reason. *Held*: It is not inferable that, under these circumstances, OAR 255-030-0026 gives rise to the nonspeculative risk that petitioner's incarceration will be longer than it would have been without the rule. Petitioner's *ex post facto* challenge fails for that reason. His due process rights were not violated because the process afforded by the board is consistent with what the United States Supreme Court has deemed adequate. Finally, the board's order supplies a rational connection between the facts and the legal conclusions it draws from them, satisfying the standard for substantial reason.

Affirmed.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the briefs for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kirsten M. Naito, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Aoyagi, Judge.

LAGESEN, C. J.

Affirmed.

**LAGESEN, C. J.**

Petitioner seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision (the board). In that order, which the board issued after an exit interview, the board deferred petitioner's parole release date for 24 months; it found that petitioner suffers from a present severe emotional disturbance (PSED) that constitutes a danger to the health or safety of the community, so as to permit the deferral of petitioner's parole release date under ORS 144.125 (1977), *amended by* Or Laws 1981, ch 426, § 2; Or Laws 1987, ch 320, § 53; Or Laws 1989, ch 790, § 68; Or Laws 1993, ch 334, § 1; Or Laws 1999, ch 141, § 1; Or Laws 2009, ch 660, § 3. On review, petitioner contends that (1) the board violated his rights under the *ex post facto* clauses of the state and federal constitutions when it applied OAR 255-030-0026—promulgated after petitioner committed his crimes—to permit two persons to make statements at his exit interview; (2) the board violated his due-process rights under the federal constitution when it permitted those persons to make statements at his exit interview without giving him advance notice that they would be speaking; and (3) the board's finding that he suffers from a present severe emotional disturbance is not supported by substantial reason. We affirm.

The facts relevant to the issues before us are not disputed. In 1981, a jury convicted petitioner of first-degree robbery, two counts of first-degree rape, and two counts of first-degree sodomy. The trial court sentenced petitioner to 20 years' incarceration on each conviction, all sentenced to run consecutively, for a total of 100 years' incarceration. That term of incarceration was imposed consecutively to a 40-year term of incarceration imposed in a prior case based on petitioner's convictions for similar conduct the year before. Petitioner's 1981 convictions were based on a jury's finding that petitioner broke into the apartment of two students at the University of Oregon and then raped and robbed them. At the time, petitioner was suspected in numerous similar offenses in Eugene, and had been charged with some of those offenses. After petitioner was sentenced to 100 years' incarceration, the charges in the other cases were dismissed, in view of the lengthy sentence imposed.

In 2020, the board held an exit interview to determine whether to release petitioner on his projected release date or whether to defer petitioner's projected release date. Before the exit interview, the board obtained a psychological evaluation of petitioner to assist in its evaluation of him. The evaluator opined that petitioner has an "[o]ther specified paraphilic disorder, coercive type," among other disorders. She further opined that petitioner's disorders "predispose him to the commission of future sexually violent behavior," and that he "has not fully addressed the issues that drive his risk for sexual re-offense." Ultimately, the evaluator concluded that petitioner "represents a moderate risk of re-offense." Petitioner obtained his own evaluation with a different evaluator. At the exit interview, petitioner's lawyer represented that that evaluation was "not intended to be a full psychological evaluation" but was intended, instead, "to provide some additional context for the board about who [petitioner] was and what he's been through." That evaluator opined that petitioner was at low risk to reoffend because of his age.

At the exit interview, in accordance with OAR 255-030-0026(4)(f), which provides that "[t]he board retains the discretion to allow oral statements at hearings from one or more persons [not specifically identified in the rule], if the Board deems the person(s) to have a substantial interest in the case, or to be able to provide information that may assist the Board in its deliberations," the board permitted two women, C and W, to make statements at the exit interview. Both women were victims of the sexual assaults underlying some of the charges against petitioner in the cases that had been dismissed once petitioner received the lengthy sentence. At the exit interview, both described how, in 1980, when they were 18-year-old students in their first year at the University of Oregon, petitioner broke into their apartment and sexually assaulted them, holding them captive for a six-hour period. The board had not notified petitioner ahead of the exit interview that the women would make statements.

Following the women's statements, the board gave petitioner an opportunity to respond. In response, he denied being the person who committed the offenses against them.

At the close of the hearing, the board deferred petitioner's release date for two years:

> "Based on the doctor's report and diagnosis coupled with all the information that the board is considering, the board concludes that you suffer from a present severe emotional disturbance that constitutes a danger to the health or safety of the community. The board has considered this matter under the substantive standard in effect at the time of the commitment offenses and all other applicable rules and laws. The board is deferring your release date 24 months and establishing a new projected release date of December 9, 2022."

The board memorialized that decision in Board Action Form (BAF) 7.

Petitioner requested administrative review of BAF 7. On administrative review he argued, among other things, that the board's application of OAR 255-030-0026 to allow C and W to make statements violated the state and federal constitutional prohibitions on *ex post facto* laws, that allowing C and W to make statements without giving petitioner advance notice violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and that the board's finding that petitioner suffers from a present severe emotional disturbance is not supported by substantial evidence. In support of his contentions that allowing C and W to make statements had rendered his hearing unfair, petitioner submitted documentation from the investigation of the crime against them and pointed out inconsistencies between that documentation and their statements.

On administrative review, the board adhered to its decision in BAF 7. It explained that, on review, it found "that its decision to defer your release date for 24 months was proper and legal." Addressing petitioner's arguments regarding the statements by C and W, the board stated that "While the Board allowed the victims in your case to make statements, the Board's decision rested on the substantial evidence and reasoning identified in BAF #7."

Petitioner petitioned for judicial review, as allowed by ORS 144.335. As noted, he contends that the board's

application of OAR 255-030-0026 to permit C and W to make statements at his exit interview violated his rights under the *ex post facto* clauses of Article I, section 21, of the Oregon Constitution and Article I, section 10, of the United States Constitution; that allowing C and W to make statements at his hearing without giving him advance notice violated his due process rights under the Fourteenth Amendment; and that the board's determination that petitioner has a PSED that makes him a danger to the health or safety of the community is not supported by substantial reason. The board, in response, asserts that it did not rely on the statements by C and W, making any error in allowing the statements harmless. The board argues further that the application of OAR 255-030-0026 to permit the statements by C and W did not offend the state and federal constitutional prohibitions on *ex post facto* laws. It contends further that due process did not require it to notify petitioner that it would allow C and W to make statements in advance of the hearing. Finally, it argues that substantial evidence supports the finding that petitioner has a PSED that makes him a danger to the health or safety of the community.

We review for legal error and substantial evidence (including substantial reason). ORS 144.335(3); ORS 183.482(8); *Jenkins v. Board of Parole*, 356 Or 186, 205, 335 P3d 828 (2014).

We start with petitioner's contention that applying OAR 255-030-0026 to allow C and W to make statements violated his rights under the *ex post facto* prohibitions in the state and federal constitutions. Because any change in law resulting from the promulgation of that rule is not substantive but procedural,[1] to prevail petitioner must "demonstrate—through something other than speculation—that the change in law created a risk that petitioner's term of incarceration would be extended beyond what it otherwise would have been." *Morrison v. Board of Parole*, 277 Or App 861, 866, 374 P3d 948, *rev den*, 360 Or 465 (2016).

---

[1] Although no statute or rule appears to have specifically authorized the board to permit persons with a substantial interest in a parole proceeding to make a statement at an exit interview, it is not readily apparent that such a practice would have been prohibited.

Petitioner in this case did not make that necessary showing. As the board points out, we previously rejected state and federal *ex post facto* challenges to the statute that gave representatives of crime victims the right to attend and testify at parole hearings. *Dawson v. Board of Parole*, 123 Or App 619, 621-22, 860 P2d 878 (1993). To the extent our analysis in *Dawson* is not dispositive of the question in this case, it is worth observing that the provision of OAR 255-030-0026 under which the board permitted C and W to make statements is neutral in the sense that it appears to contemplate statements both by persons supporting a person's release on parole, as well as by persons opposing it, if those persons have an interest in the case or useful information: "The board retains the discretion to allow oral statements at hearings from one or more persons [not specifically identified in the rule], if the Board deems the person(s) to have a substantial interest in the case, or to be able to provide information that may assist the Board in its deliberations." Under those circumstances—where the rule would allow both positive and negative statements—it is not inferable that the rule gives rise to the nonspeculative risk that petitioner's incarceration will be longer than it would have been without the rule. Petitioner's *ex post facto* challenge fails for that reason.

Petitioner next argues that his due process rights under the Fourteenth Amendment were violated when the board permitted C and W to make statements without giving him advance notice that the board would permit the statements. Petitioner argues that, absent advance notice of the statements, he did not have the meaningful opportunity to respond to them as required by due process. We disagree.

The Oregon Supreme Court has determined that Oregon law creates a constitutionally protected liberty interest in parole. *Stogsdill v. Board of Parole*, 342 Or 332, 337, 154 P3d 91 (2007). That leaves the question of what process is due. *Id*. at 336. Relying on United States Supreme Court precedent, we previously have concluded that, in the context of an exit interview, the procedures required by due process are minimal. *Swarthout v. Cooke*, 562 US 216, 220, 131 S Ct 859, 178 L Ed 2d 732 (2011) ("In the context of parole, we

have held that the procedures required are minimal.”); *Rivas v. Board of Parole*, 272 Or App 248, 253-54, 356 P3d 83 (2015) (same). Procedures that permit an inmate to be heard and respond to the evidence against them, and that provide for a statement of reasons for the denial of parole, have been deemed constitutionally sufficient. *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 US 1, 16, 99 S Ct 2100, 60 L Ed 2d 668 (1979). Due process does not require that an inmate be permitted to call or cross-examine witnesses in an exit interview. *Rivas*, 272 Or App at 253-54.

In view of *Rivas*, *Swarthout*, and *Greenholtz*, we are persuaded that due process did not require the board to give petitioner advance notice that C and W would make statements in order to safeguard his meaningful opportunity to respond. Even with advance notice, under *Rivas*, petitioner would not have been entitled to cross-examine C and W or call witnesses to respond to their statements, so the lack of advance notice did not affect a protected right to call or cross-examine witnesses. Petitioner was given an opportunity to respond to, and to deny, their allegations at the hearing. In addition, on administrative review, the board permitted petitioner to attach documents in support of his contention that their allegations were false, providing him with an additional opportunity to respond to the statements following a greater period of reflection. Finally, in BAF 7 and its administrative review response, the board supplied its reasoning for its decision, explaining that the basis for its deferral was that petitioner currently had a PSED that rendered him a danger to the health or safety of the community. That process, as a whole, provided petitioner with a meaningful opportunity to be heard generally, and about the statements made by C and W particularly. By providing a statement of reasons for the decision, the process also gave petitioner a meaningful opportunity to seek redress for any alleged errors in the board's decision-making process, including any erroneous reliance on the statements by C and W. We therefore conclude that the process afforded by the board is consistent with what the United States Supreme Court deemed adequate in *Swarthout* and *Greenholtz*.

In his final assignment of error, petitioner asserts that the board's determination that he suffers from a PSED is not supported by substantial reason. "[W]hether an agency's ultimate conclusions from its findings of fact are supported by substantial reason turns on whether the agency's order supplies a 'rational connection between the facts and the legal conclusions it draws from them' such that the conclusions are sufficiently reviewable by an appellate court." *United Academics of OSU v. OSU*, 315 Or App 348, 355-56, 502 P3d 254 (2021). Here, having reviewed the board's order, we are convinced that its explanation of its decision satisfies that standard.

Affirmed.