Submitted April 1, affirmed October 29, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## STEVEN RAY CHRISCO, JR.,
*Defendant-Appellant.*

Marion County Circuit Court
04C51401; A127656

196 P3d 10

Ingrid A. MacFarlane filed the briefs for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Susan G. Howe, Senior Assistant Attorney General, filed the briefs for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant appeals his convictions for possession of a controlled substance, *former* ORS 475.992(4) (2003), *renumbered as* ORS 475.840(3) (2005), and felon in possession of a firearm, ORS 166.270. He argues that the trial court erred in denying his motion to suppress evidence found after a search that occurred during an unlawful stop and in admitting a hearsay report identifying the substance found on him as methamphetamine. We conclude that neither of defendant's claims of error was preserved in the trial court. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). The alleged error regarding the unlawful stop is not "apparent on the face of the record," and the error regarding hearsay, although plain, is not an error that we choose to exercise our discretion to review. ORAP 5.45(1). We therefore affirm.

The relevant facts in this case are undisputed. Defendant was a passenger in a car driving through north Salem at 3:00 a.m. Officer Baskett noticed the car and recalled that he had seen it in the vicinity of what he knew to be a "drug house" in the same area. In the past, Baskett had followed the car with the intention of stopping it if the driver committed a traffic violation, but none had occurred. On this night, Baskett again followed the car. He notified another officer in the area, Stackhouse, and Stackhouse soon pulled his car in behind Baskett.

Shortly thereafter, the driver of the car committed a traffic violation while turning into a parking lot. Baskett immediately turned on his overhead lights. The driver continued to drive slowly for approximately eight to 10 car lengths and then stopped. Stackhouse noticed that the occupants of the car were making what he characterized at the motion to suppress hearing as "furtive gestures"; defendant, who was in front, was reaching under the seat.

Baskett went to the driver's side of the car, and Stackhouse approached defendant's side. Although the driver provided Baskett with a valid driver's license and other requested documentation, Baskett noted that she was acting as though she were trying to conceal something in her purse, which was sitting on her lap. When Baskett shined a

flashlight on her purse to see what she was doing with her hands, she abruptly told him, "Don't do that."

Baskett then turned his attention to the passengers. He asked defendant and the passenger in the back seat if they had identification, and both of them said no. Baskett then asked defendant for his name and date of birth. Defendant provided a name and date of birth, but the name was false, a fact that Baskett discovered after he called dispatch from his patrol car to check for warrants and was told that the name that defendant had provided did not match with that person's date of birth. At that point, Baskett went back to defendant and asked him his age, and he told Baskett that he was 23. Because defendant had given Baskett a birth date of January 18, 1980, and the incident occurred on October 5, 2004, Baskett determined that defendant had given him false information; he then arrested defendant for violating Salem Revised Code § 95.431, which prohibits giving false information to a police officer "with intent to hinder, delay, impede, or mislead said officer in the prosecution of his official work, or with the intent to obstruct justice."

Baskett ordered defendant out of the car, and Stackhouse performed a patdown search and, after feeling suspicious bulges, found several items in defendant's pockets, including a plastic box containing a gram scale, $120, and a clear plastic bag containing a crystal substance that the officers believed to be methamphetamine. The officers then searched the car, where they discovered a box of ammunition near defendant's seat, a handgun under his seat, and marijuana and a loaded handgun behind the back seat.

Defendant was charged with possession of a controlled substance (methamphetamine) and felon in possession of a firearm. He filed a pretrial motion to suppress all of the evidence. His argument at trial consisted of the assertion that, once the officers had determined that the driver of the car was licensed and had no outstanding warrants, they should have ended the interaction at that point; thus, defendant argued, everything that transpired thereafter occurred during an unlawful extension of the stop. "The infraction should have been cited if they, in fact, figured out that they wanted to cite for the infraction, and that should have been

the extent of the investigation." The trial court denied that motion; in an oral ruling, it explained:

> "We have a situation here where we have a * * * bad turn traffic stop. We have the officers just—Officer Baskett was making the contact with the driver. In the course of this investigation of that infraction, it's true that he did get the information that he asked for from the driver, but he also asked at that time for name and ID of the drivers [*sic*: passengers?]. And I don't see that that extends the stop impermissibl[y] or it's something he didn't have the power to do. And then upon checking out that information, I think he instantly got into reasonable suspicion, if not probable cause, that he had been given the wrong information."

Defendant was subsequently convicted.

■ On appeal, defendant assigns error to the trial court's denial of his motion to suppress. However, he no longer argues that the search occurred during the unlawful extension of a lawful traffic stop. Rather, he now argues that, when Baskett asked him for his name and birth date and then ran a check on that information, that interaction was a "stop" under Article I, section 9, of the Oregon Constitution, independent of the earlier, concededly lawful, traffic stop. Because the officer lacked reasonable suspicion, defendant argues, that second stop was unlawful.[1] In response, the state does not contend that Baskett had reasonable suspicion of criminal activity before asking defendant for information; rather, it argues that no stop occurred at that point and that, when a stop did occur—after Baskett learned that defendant had provided false information—it was founded on reasonable suspicion. The state also argues that, even if a stop occurred, it was justified by officer safety concerns.

The argument that defendant relied on at trial is clearly related to the argument that he makes on appeal. Both arguments support the proposition that the evidence should have been suppressed because the officer searched defendant without reasonable suspicion. At trial, however, defendant argued that the questioning was unlawful because

---

[1] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

it occurred *after* all reasonable suspicion associated with the traffic infraction had dissipated. On appeal, defendant argues that the questioning was unlawful because it occurred *before* the officer had reasonable suspicion that defendant was engaged in criminal activity. This is not an insignificant difference. Each theory relies on different case law. In arguing that officers can continue to question a person after completing the investigation of a traffic infraction, defendant relied on a line of cases beginning with *State v. Carter/ Dawson*, 287 Or 479, 600 P2d 873 (1979). The question whether a particular encounter between a police officer and a person amounts to a constitutionally significant seizure involves a line of cases beginning with *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991). Further, the findings of fact on which each of defendant's theories turns are different. Most significantly, an argument that an encounter is or is not a "stop" requires determinations involving whether the officer intended to limit the person's freedom of movement, whether the person reasonably believed that his or her freedom of movement had been significantly limited, whether the officer's conduct transcended the bounds of ordinary social interaction, and other circumstances. *Id.* at 409-10. In the present case, defendant did not present the court with any legal argument relevant to the issue of whether asking for his name and birth date was a stop, nor did he adduce any facts that might have supported that legal theory. The state had no opportunity to make opposing legal arguments or adduce contradictory facts. Thus, the claim of error that defendant makes on appeal was not preserved below. *Wyatt*, 331 Or at 343. Further, if the court's denial of defendant's motion was error, it was not plain error. We therefore lack the authority to address it on appeal. ORAP 5.45(1).

■       Defendant also argues that the trial court erred in admitting a laboratory report indicating that the substance seized from him was methamphetamine. He did not object to the report at trial. According to defendant, we should review the admission nonetheless, because it was plain error under *State v. Birchfield*, 342 Or 624, 157 P3d 216 (2007). However, in *State v. Raney*, 217 Or App 470, 474, 175 P3d 1024, *rev den*, 344 Or 671 (2008), we held that, where the record is susceptible to an inference that the defendant consciously chose

not to object to the admission of a laboratory report because he would not have gained anything by doing so, no plain error occurs. Here, the nature of the seized substance was never at issue. When confronted with the fact that the officer recovered a baggie of methamphetamine from his pocket, defendant replied that it "was for personal use." He justified possessing a small scale by stating that he used it when buying drugs in order to avoid being cheated. We conclude that one inference to be drawn from the record is that defendant consciously chose not to object to the admission of the laboratory report because he knew that, if he did, the state would call the criminalist, who would testify that the report was accurate. The asserted error was therefore not plain.

Affirmed.