LAGESEN, P. J.
*742 This workers' compensation case requires us to determine the correct remedy when the Workers' Compensation Division provides surveillance video of a claimant to a panel of medical arbiters in violation of one of the agency's own rules, OAR 436-030-0155(4)(a). We agree with claimant that OAR 436-030-0155(4)(a) precludes the agency from relying upon findings in a medical arbiter panel's report that are based on the arbiters' improper consideration of surveillance video, and we reverse and remand for further proceedings under a correct interpretation of that rule.
Claimant was injured at work in April 2013, and his employer's insurer, Travelers Insurance Company (Travelers), accepted a *384 claim for cervical, thoracic, and lumbar strains /sprains. Travelers issued a notice of closure in November 2015 that awarded claimant permanent partial disability for impairment of the thoracic and lumbar spine. Both claimant and Travelers then sought reconsideration by the Appellate Review Unit (ARU) of the Workers' Compensation Division. As part of the reconsideration process, a panel of medical arbiters evaluated claimant and found decreased spinal ranges of motion, but the panel also reviewed a DVD of surveillance video of claimant that had been taken before claim closure. In its report, the arbiter panel determined that the surveillance video on the DVD "demonstrate[d] greater cervical, thoracic, and lumbar motion than what was seen" in the examination of claimant, such that the panel's own examination of motion was "not valid for the purpose of measuring permanent impairment."
Based on the medical arbiters' report, the ARU reduced claimant's permanent partial disability award to zero. Claimant appealed that decision, and a hearing was scheduled before an administrative law judge (ALJ). Before the ALJ, claimant argued that the underlying medical arbiters' report was flawed and should have been excluded from consideration by the ARU, because the arbiters had improperly considered surveillance video on the DVD as part of their review. Specifically, claimant argued that some of that video had not been reviewed by claimant's treating physician prior to claim closure, in violation of *743 OAR 436-030-0155 (4)(a). That rule, which concerns the record on reconsideration, provides:
"(4) When any surveillance video obtained prior to closure has been submitted to a physician involved in the evaluation or treatment of the worker, it must be provided for arbiter review.
"(a) Surveillance video provided for arbiter review must have been reviewed prior to claim closure by a physician involved in the evaluation or treatment of the worker ."
(Emphasis added.)
The ALJ agreed with claimant that the DVD included video that had been provided for arbiter review in violation of that rule, but it nonetheless affirmed the order on reconsideration. Claimant then appealed the ALJ's decision to the Workers' Compensation Board, and the board, like the ALJ, rejected claimant's argument that the medical arbiter panel's report should have been excluded from consideration because of the violation of OAR 436-030-0155 (4)(a). The board reasoned:
"Here, claimant does not cite, and we do not find, any statutory authority, administrative rule, or case precedent to support the proposition that the medical arbiter panel's report should be 'excluded from consideration' because the panel reviewed a surveillance video that did not comply with OAR 436-030-0155(4)(a). Instead, an insurer that does not provide information complying with the requirements set forth in OAR 436-030-0135, 436-030-0145, 436-030-0155, and 436-030-0165 may be assessed civil penalties, and such failure may also be grounds for extending the reconsideration proceeding. OAR 436-030-0175(1). Thus, the rules do not outright preclude the consideration of the medical arbiter panel's report in rating claimant's permanent disability under these particular circumstances."
The board affirmed the ALJ's order.
Claimant now seeks judicial review of that final order, arguing that the board erred "in relying on evidence that violated the administrative rules set forth for arbiter examinations and by concluding that 'the rules do not outright preclude the consideration of the medical arbiter panel's report in rating claimant's permanent disability *744 under these circumstances.' " Travelers,[1] on the other hand, defends the board's reasoning and argues that the remedy for a violation of the rule is to extend the reconsideration process or to impose civil penalties on an insurer responsible for the violation, not to ignore the medical panel's findings concerning impairment. We agree with claimant and therefore reverse and remand the board's order. *385 On judicial review, there is no dispute that the DVD included surveillance video that did not meet the requirement set out in OAR 436-030-0155(4)(a). The parties' debate is over the consequence of that violation-a matter of rule interpretation that we review for legal error. See Johnson v. Employment Dept. , 189 Or. App. 243, 248, 74 P.3d 1159, adh'd to as modified on recons. , 191 Or. App. 222, 81 P.3d 730 (2003) ("The interpretation of rules is a legal question that we review for errors of law."); ORS 656.298(7) (providing that the Court of Appeals reviews orders of the workers' compensation board as provided in ORS 183.482(7) and (8) ); ORS 183.482(8)(a) (providing that the court shall remand the case to the agency for further action under a correct interpretation of a provision of law).
When interpreting an administrative rule, we ordinarily must determine whether an agency has interpreted one of its own rules, such that the interpretation is entitled to deference. See Don't Waste Oregon Com. v. Energy Facility Siting , 320 Or. 132, 142, 881 P.2d 119 (1994) (explaining that, where an agency has interpreted one of its own rules, courts will defer to the agency's interpretation if that interpretation is plausible and is not inconsistent with the rule in its context or with some other source of law). However, that deference only extends to a plausible interpretation of an agency's rule. In this case, as we will explain, there is no plausible interpretation of OAR 436-030-0155(4)(a) that would allow the agency to rely on findings in a medical arbiter report that were, in turn, based on video considered in violation of that rule.[2]
*745 In determining whether an interpretation of a rule is plausible, we apply the same principles of interpretation that are used to construe statutes. Haskins v. Palmateer , 186 Or. App. 159, 166, 63 P.3d 31, rev. den. , 335 Or. 510, 73 P.3d 291 (2003). "At the first level of analysis, we examine the text and context of the rule to discern the intent of the agency." State v. Hogevoll , 348 Or. 104, 109, 228 P.3d 569 (2010). Terms of common usage in the text of a rule "should be given their plain, natural, and ordinary meaning unless specifically defined or used in some other way." Id. at 110, 228 P.3d 569.
The text of OAR 436-030-0155(4)(a), viewed in context, indicates that the rule is more than merely procedural. By stating that "[s]urveillance video provided for arbiter review must have been reviewed prior to claim closure by a physician involved in the evaluation or treatment of the worker" (emphasis added), the rule sets forth a mandatory precondition that must be satisfied for the video to be part of the arbiter review. See generally Oregon Cable Telecommunications v. Dept. of Rev. , 237 Or. App. 628, 635, 240 P.3d 1122 (2010) (explaining that the verb "must" generally connotes "a required action when used in law" or an " 'absolute requirement' " (quoting Bryan A. Garner, A Dictionary of Modern Legal Usage 577-78 (2d ed. 1995) (explaining that, in legal drafting, "must" is generally used in the sense of "an absolute requirement") ) ). Read together with the first sentence of OAR 436-030-0155(4), the rule expresses a complete thought with regard to the circumscribed role that surveillance video plays in arbiter review: All surveillance video that has been submitted and reviewed prior to closure by a physician involved in treating or evaluating the worker "must be provided for arbiter review," but that is the only surveillance video that is part of that review.
Nothing in the text, context, or history of the rule suggests that the restriction on arbiter review of surveillance *746 video is hortatory.[3] See *386 State v. Biscotti , 219 Or. App. 296, 300-01, 182 P.3d 269 (2008) (explaining that there "is nothing 'hortatory' " about a statute that established a 90-day deadline for the issuance of a supplemental judgment ordering restitution and provided that "the court 'shall' comply with that deadline in the absence of good cause"). Rather, where an agency has enacted a specific and mandatory rule governing what evidence is considered, it must follow that rule. See Smith v. Veterinary Medical Examining Board , 175 Or. App. 319, 327, 27 P.3d 1081, rev. den. , 332 Or. 632, 34 P.3d 1178 (2001) ("An agency must comply with the statutes that govern it and follow its own rules. * * * [T]he observance of procedural and evidentiary standards plays an important role in ensuring a fair consideration of contested fact issues.").
In that light, the only plausible interpretation of OAR 436-030-0155(4)(a) is that it precludes the agency from relying upon findings in a medical arbiters' report that are based on consideration of surveillance video that never should have been part of the arbiter review. That is the only interpretation that effectuates the plain intent of the rule, which is to prevent that type of surveillance video from influencing the arbiters' findings and any later determination based on those findings.[4] Accord. ORS 656.283(6) ("Evaluation of the worker's disability by the Administrative Law Judge shall be as of the date of issuance of the reconsideration order pursuant to ORS 656.268. Any finding of fact regarding the worker's impairment must be established by medical evidence that is supported by objective findings. * * * Evidence on an issue regarding a notice of closure that was not submitted at the reconsideration required by ORS 656.268 is not admissible at hearing, and issues that were not raised by a party to the reconsideration may not be *747 raised at hearing unless the issue arises out of the reconsideration order itself.").
Neither of the alternative remedies identified by Travelers and the board are plausible ways of understanding the agency's rules concerning surveillance video. First, they point to the opening sentence of OAR 436-030-0175(1), which provides that "[a]n insurer failing to provide information or documentation as set forth in OAR 436-030-0135, 436-030-0145, 436-030-0155 and 436-030-0165 may be assessed civil penalties under OAR 436-030-0580." However, that provision governs only the conduct of insurers . In this case, there is no dispute that the Workers' Compensation Division, not Travelers, provided the surveillance video to the arbiter panel, and the rule does not address that circumstance.[5]
Second, Travelers' argument and the board's order assert that, under the second sentence of that same rule, reconsideration can be extended where the surveillance video has not been provided to the claimant's attending physician. See OAR 436-030-0175(1) ("Failure to comply with the requirements set forth in OAR 436-030-0135, 436-030-0145, 436-030-0155, and 436-030-0165 may also be grounds for extending the reconsideration proceeding under ORS 656.268(6)."). Even assuming that sentence of the rule applies in this circumstance, it only confirms our conclusion that OAR 436-030-0155(4)(a) precludes the agency from relying upon findings in a medical arbiters' report that are based on the arbiters' improper consideration of surveillance video. An extension of the reconsideration proceeding will not change whether a surveillance video satisfies the rule; by its terms, the video "must have been reviewed prior to claim closure ." OAR 436-030-0155(4)(a) (emphasis added). Thus, a violation of OAR 436-030-0155(4)(a) will not be cured through an extension of the reconsideration *387 proceeding unless the effect of that extension is to eliminate the arbiters' reliance on the video-the remedy that is implicit in OAR 436-030-0155(4)(a) itself.
For those reasons, we agree with claimant that the board erred in concluding that the agency's rules allowed *748 consideration of the medical arbiter panel's report in rating claimant's permanent partial disability under the circumstances of this case. Accordingly, we reverse and remand for further proceedings consistent with this opinion.[6]
Reversed and remanded.

Respondents are Travelers and claimant's employer, Progressive Logistics Services. For readability, we refer to respondents collectively as "Travelers."

As we explained in Godinez v. SAIF , 269 Or. App. 578, 582-83, 346 P.3d 530 (2015), "[t]he rules in OAR chapter 436 were promulgated by the Director of [the Department of Consumer and Business Services (DCBS) ], see OAR 436-035-0001, and we defer to DCBS's plausible interpretation of its rules. * * * That deference extends to the ARU, which is the delegate of the director and has the authority to determine the proper application" of those rules. However, given our conclusion that there is no plausible interpretation of OAR 436-030-0155(4)(a) that would have permitted the ARU to rely upon the findings in the medical arbiters' report, we do address whether the ARU necessarily interpreted its rule in the process of applying it to claimant.

Claimant has provided enactment history that reflects the agency's understanding that only video obtained prior to the notice of closure is "appropriate and pertinent" if viewed by the attending physician.

Travelers' argument and the board's order suggest that any violation of the rule was harmless, because the arbiters relied on other information as well. We reject that contention. The arbiter panel expressly relied on surveillance video in its report and stated that "[t]he DVD has had an impact on our opinion regarding functional capacity and validity." There is no basis for us to conclude that it would have reached the same findings in the absence of the video.

The rules contemplate that the director, not the parties, will provide information to the arbiters for their review. See OAR 436-030-0155(2), (3).

Because we remand based on that error, we do not reach claimant's remaining assignments of error.