Submitted October 14, 2021, reversed and remanded February 16, 2022

COUNTY OF KLAMATH,
on behalf of
Klamath County Justice Court,
*Plaintiff-Respondent,*

*v.*

Donald W. RICARD,
*Defendant-Appellant.*

Klamath County Circuit Court
20VI80342; A174874

507 P3d 333

Defendant was found to have violated OAR 340-071-0130(2), an administrative rule of the Department of Environmental Quality (DEQ) that provides that "[a]ll wastewater must be treated and dispersed in a manner approved under these rules." The basis for the violation was that defendant's property had access to clean water but lacked an approved wastewater treatment system. It is undisputed that no one was using the property during the time period relevant to the citation. In DEQ's view, a property owner violates OAR 340-071-0130(2) by having the means to create wastewater, while lacking approved means to treat and disperse it, regardless of whether any wastewater is in fact generated. On appeal of the judgment of violation, defendant argues that DEQ's interpretation of the rule is not plausible and that the trial court erred in adopting it. Under a correct interpretation, defendant argues, the evidence was legally insufficient to support a violation. *Held*: DEQ's interpretation of the rule was not plausible. The only plausible interpretation is that a property owner violates OAR 340-071-0130(2) by failing to treat and disperse in an approved manner any wastewater generated on the property. A property owner does not violate the rule by merely having the capacity to generate wastewater. Under a proper interpretation of the rule, the evidence was legally insufficient to prove a violation of OAR 340-071-0130(2), and the trial court erred in ruling otherwise.

Reversed and remanded.

Cameron F. Wogan, Judge.

Michael W. Franell filed the briefs for appellant.

Marcus M. Henderson filed the brief for respondent.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

Defendant was found to have violated OAR 340-071-0130(2), an administrative rule of the Department of Environmental Quality (DEQ) that provides that "[a]ll wastewater must be treated and dispersed in a manner approved under these rules." It is uncontested that defendant did not generate any wastewater on his property during the time period covered by the challenged citation. The county contends, however, that a property owner violates OAR 340-071-0130(2) if "the property can generate wastewater, but has no approved system by which to treat such wastewater," regardless of whether any wastewater is actually generated on the property. We agree with defendant that DEQ's interpretation of its rule is not plausible and, accordingly, reverse.

## FACTS

The relevant facts are undisputed. Defendant owns an undeveloped parcel of real property in a rural area. The property is not connected or connectable to a city sewer system. In early 2019, defendant applied to the county for a septic system permit. The county sent a DEQ agent, Hill, to conduct a soil evaluation to be used in determining what type of septic system would be needed.

Hill visited the property on May 17, 2019. She observed that defendant was living in a "Tuff Shed," which we understand to mean a prefabricated shed. There was a water cistern near the shed, as well as a holding tank mounted on the outside wall of the shed that Hill thought likely gravity-fed clean water into the shed. Hill cited defendant on behalf of the county for violating OAR 340-071-0130(3), which prohibits discharging "untreated or partially treated wastewater or septic tank effluent directly or indirectly onto the ground surface or into public waters."[1] Defendant did not challenge the May 17 citation.

---

[1] OAR 340-071-0130(3) states, in full: "Prohibited discharges of wastewater. A person may not discharge untreated or partially treated wastewater or septic tank effluent directly or indirectly onto the ground surface or into public waters. Such discharge constitutes a public health hazard and is prohibited."

Upon receiving the May 17 citation, defendant left the property. He did not install a septic system before leaving, but he also did not discharge any more wastewater. It is undisputed that no wastewater was produced or discharged on the property between May 17 and October 8.

On October 8, 2019, Hill visited the property again and took photographs. The property still did not have a septic system, so Hill cited defendant again on behalf of the county, this time for violating both OAR 340-071-0130(2) and (3). OAR 340-071-0130(3) has already been described. OAR 340-071-0130(2) provides:

> "Approved treatment and dispersal required. All wastewater must be treated and dispersed in a manner approved under these rules."

In Hill's view, "there is no such thing as dry camping," so if you are living somewhere with access to water, "you are producing wastewater." Hill cited defendant on October 8 because he had not installed an approved treatment system after she cited him on May 17.

Defendant contested the October citation, which imposed a $1,440 penalty ($720 for each subsection). He was found guilty by the Klamath County Justice Court. Defendant sought *de novo* review by the Klamath County Circuit Court. At that point, the county dropped the alleged violation of OAR 340-071-0130(3) and went to trial solely on the alleged violation of OAR 340-071-0130(2).

At trial, Hill testified that she issued the October 8 citation because defendant had not "fixed" the problem for which he was cited on May 17. Hill testified that all wastewater must be treated in an approved manner, which means either connecting to an existing city sewer system or installing a septic system; that defendant's property could not be connected to an existing city sewer system; and that defendant had not installed a septic system. She further testified that the mere presence of the water cistern and holding tank on defendant's property established a violation of OAR 340-071-0130(2), regardless of whether any wastewater was being generated. In Hill's view, the ability to generate wastewater on a property, without a corresponding approved means of

treating it, gives rise to a violation, regardless of whether any wastewater is actually being generated on the property.[2]

At the conclusion of the county's case, defendant moved to dismiss, based on the lack of evidence that any wastewater was discharged between May 17 and October 8. The trial court denied the motion without explanation. Defendant then put on his case. Ultimately, the trial court found in the county's favor, ruling without explanation that defendant had violated OAR 340-071-0130(2). Defendant appeals.

## ANALYSIS

Defendant contends that the trial court erred in finding him guilty of violating OAR 340-071-0130(2), with respect to the October 8 citation, because the evidence was legally insufficient. The crux of defendant's argument is that DEQ's interpretation of OAR 340-071-0130(2)—as expressed by Hill—is not plausible and that, when the rule is properly construed, he did not violate it.[3] The county counters that DEQ's interpretation is plausible. The county argues that, as plausibly interpreted by DEQ, a property owner violates OAR 340-071-0130(2) by "having the ability to disperse wastewater, without the approved means to treat the same," regardless of whether any wastewater is actually generated. The county describes the "property" or the "home" as violating the rule in such circumstances.

The question presented then is whether DEQ's interpretation of OAR 340-071-0130(2) is plausible. We will "defer to [an] agency's plausible interpretation of its own rule, including an interpretation made in the course of applying the rule, if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law." *Harris v. Dept. of Public Safety Standards*, 287 Or App 111,

---

[2] We note that defendant had a recreational vehicle (RV) parked on his property on both citation dates, along with a portable blue storage tank that could be used to transfer wastewater from the RV to an RV dump station without moving the RV. Both parties mention the blue tank briefly on appeal, but it is fundamentally not at issue.

[3] Defendant also challenges to some extent whether Hill's view of OAR 340-071-0130(2), as described by Hill and the county's attorney, should be treated as *DEQ's* interpretation of the rule. Given our disposition, we need not reach that issue.

115, 400 P3d 1032, *rev den*, 362 Or 94 (2017) (internal quotation marks and emphasis omitted). Otherwise, we interpret administrative rules in the same manner as statutes. *Pena v. Travelers Ins. Co.*, 294 Or App 740, 745, 432 P3d 382 (2018), *rev den*, 364 Or 723 (2019). That is, we consider "the text of the rule and its context, including other portions of the rule and related laws, and the rule's adoption history." *Harris*, 287 Or App at 115.

The rule in dispute is OAR 340-071-0130(2), which, as previously described, states, "Approved treatment and dispersal required. All wastewater must be treated and dispersed in a manner approved under these rules." DEQ interprets "[a]ll wastewater" to include both actual and hypothetical wastewater. As the county puts it in its answering brief, "it is the ability of a property owner to create untreated dispersals that creates the violation," regardless of whether any untreated dispersal actually occurs.

We agree with defendant that DEQ's interpretation of OAR 340-071-0130(2) is not plausible. The rule requires that "all wastewater" be "treated and dispersed" in an approved manner. Hypothetical wastewater cannot be treated and dispersed—only actual wastewater can be treated and dispersed. Moreover, it is humans, not properties or structures, that create wastewater. *See* OAR 340-071-0100(174) ("Wastewater" means "sewage."); OAR 340-071-0100(140) ("Sewage" means "water-carried human and animal wastes, including kitchen, bath, and laundry wastes from residences, buildings, industrial establishments, or other places, together with any groundwater infiltration, surface waters, or industrial waste that may be present.").[4] Regardless of how clean water gets to a property—whether brought by city pipes, drawn from a well, or pulled from a cistern or holding tank—wastewater theoretically can be generated on any property where humans are present. Conversely, absent humans, clean water may be present on a property (stored or otherwise) but has no means to become wastewater.

---

[4] OAR 340-071-0100(140) refers to "water-carried human and animal wastes," but this case does not involve any animal waste, so we limit our discussion to human waste.

To the extent that DEQ wants to require all *properties* to be connected to an existing sewer system or have an approved septic system—regardless of whether the property is developed or occupied or whether any wastewater is being generated—it may do so if that is within its statutory authority. But we see no way to read OAR 340-071-0130(2) as imposing that requirement. What OAR 340-071-0130(2) requires is that *wastewater* be treated and dispersed in an approved manner, not that all *properties* have the capacity to treat and disperse wastewater in an approved manner.

It may be that DEQ simply has no rules to deal with the particular type of situation here, where a parcel of real property is not developed in a meaningful sense but has rough living quarters where a person may sleep. If defendant's shed had wastewater plumbing, then he could have been found in violation of OAR 340-071-0130(9), which provides, "All plumbing fixtures in dwellings, commercial facilities, and other structures *from which sewage is or may be discharged* must be connected to and discharge into an approved area-wide sewerage system or an approved onsite system that is not failing." (Emphasis added.) Without such plumbing, defendant could be found in violation of OAR 340-071-0130(2) if any wastewater generated on his property was not "treated and dispersed" in an approved manner—which, as a practical manner, would mean if any wastewater was generated on his property, because it is undisputed that he lacked an approved manner to treat and disperse it. With or without plumbing, defendant also could be found in violation of OAR 340-071-0130(3) if he "discharge[d] untreated or partially treated wastewater *** directly or indirectly onto the ground surface or into public waters." But we see no plausible way of interpreting OAR 340-071-0130(2) such that it is a violation of that rule for clean water to be stored on property, even if no humans are present to use that water and thereby convert it to wastewater.

We are unpersuaded by the county's argument that "all wastewater" extends the meaning of "wastewater" to include not only actual wastewater but also hypothetical wastewater. That reasoning strains logic to the point of implausibility, at least as this rule is written. A somewhat

better argument for DEQ's position is that construing OAR 340-071-0130(2) to address the treatment and dispersal of actual wastewater in an approved manner overlaps with OAR 340-071-0130(3) to the point that it would render one of them surplusage. *See Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013) (courts generally should "construe a statute in a manner that gives effect, if possible, to all its provisions"); *see also 1000 Friends of Oregon v. Jackson County*, 292 Or App 173, 185-87, 423 P3d 793 (2018), *rev dismissed*, 365 Or 657 (2019) (applying the avoidance-of-surplusage principle in interpreting an administrative rule). That argument ultimately fails too, however, because OAR 340-071-0130(2) is written so broadly that several other subsections of the rule overlap with it.

We therefore conclude that DEQ's interpretation of OAR 340-071-0130(2) is not plausible. Under a correct interpretation of the rule, a property owner violates OAR 340-071-0130(2) if wastewater generated on his property is not treated and dispersed in an approved manner. It is not enough that wastewater theoretically could be generated on the property and that, if it were generated, there would be no way to treat and disperse it in an approved manner.

Here, there is no evidence that any wastewater was generated on defendant's property during the time period relevant to the October 8 citation. Indeed, it is undisputed that there was not. The county has never argued that any wastewater was generated during that time, instead relying solely on the interpretation of OAR 340-071-0130(2) as being violable without actual wastewater. We note that, if defendant (or an invitee) was living in the shed on the property, even temporarily, it likely would be fairly easy for the county to prove a violation of OAR 340-071-0130(2), even if the county did not witness a discharge or have evidence of a specific discharge. Reasonable inferences could be made from the mere fact of a human living on the property. That is not the case here though, where it is undisputed that no one was present on the property during the time period relevant to the October 8 citation.

Accordingly, as to the October 8 citation, we conclude that the trial court misconstrued OAR 340-071-0130(2) and,

as a result, erroneously found that defendant had violated OAR 340-071-0130(2).

Reversed and remanded.