23CA2203 Karl v Dept of Safety 10-10-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2203
City and County of Denver District Court No. 23CV30672
Honorable Martin F. Egelhoff, Judge

Charles Karl,

Plaintiff-Appellant,

v.

Department of Safety,

Defendant-Appellee.

ORDERS AFFIRMED

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 10, 2024

Empower P.C., Christopher M.A. Lujan, Aurora, Colorado, for Plaintiff-Appellant

Kerry C. Tipper, City Attorney, Charles T. Mitchell, Assistant City Attorney, Margaret C. Tharp, Assistant City Attorney, Denver, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, Charles Karl, appeals the district court's orders denying his motion to certify the record and affirming the decision and final order entered by defendant, the Civil Service Commission of the City and County of Denver (Commission).  We affirm.

## I.     Background

¶ 2     Karl was a captain with the Denver Fire Department.  In September 2021, the Department of Safety demoted him from the rank of captain to the rank of firefighter based on two personnel incidents that occurred in the spring of 2021.  Karl appealed the demotion.  An administrate law judge held an evidentiary hearing in December 2021.  The hearing officer issued a decision upholding the demotion in January 2022.  Karl appealed the hearing officer's decision to the Commission on January 18, 2022.

¶ 3     After more than 200 days passed without a decision, Karl filed a petition in Denver District Court Case No. 23CV30675, seeking an order compelling the Commission to issue a decision.  Eleven days later, which was 238 days after the briefing period had ended, the Commission issued its final decision and order affirming the hearing officer's decision.

¶ 4        Karl then filed the present case in the district court under C.R.C.P. 106(a)(4) seeking judicial review and reversal of the Commission's decision. He argued that the Commission abused its discretion in two ways: (1) by misapplying the applicable provisions of the Denver Fire Department Discipline Handbook; and (2) by failing to issue a decision by the deadline specified in Denver Civil Service Commission Rule 12, section 11(K)(3), which states the Commission has eighty-four days to issue a decision.

¶ 5        Rule 106(a)(4)(III) provides that "[i]f the complaint is accompanied by a motion and proposed order requiring certification of a record, the court shall order the defendant body or officer to file with the clerk on a specified date, the record or such portion or transcript thereof as is identified in the order." Karl did not file such a motion with the complaint, or his subsequently filed amended complaint. Rule 106(a)(4)(VII) continues: "If no record is requested by the plaintiff, the plaintiff shall file an opening brief within 42 days after the defendant has served its answer upon the plaintiff." Thus, Karl's opening brief was due within forty-two days after the Commission served its answer to the amended complaint. *See* C.R.C.P. 106(a)(4)(VII).

¶ 6    Nearly a month after Karl's deadline for filing his opening brief, the district court's judicial assistant emailed Karl's counsel to inquire about the status of the case.  Karl's counsel responded that "this matter is ready for a briefing schedule to be issued," and "[t]here is no motion for certification of the record pending in this case."  The same day, the district court entered an order setting a briefing schedule for the Rule 106 claims.

¶ 7    A month later, and approximately a week before the opening brief was due, Karl filed a motion to certify the record.  In his reply to the Commission's response to his motion to certify the record, Karl's attorney stated that he did not file the motion earlier because he was trying to save his client the expense of certifying the record and that he had an expectation the Commission's counsel would file the certification.[1]  The district court denied his motion, concluding that it was untimely and that Karl had made no showing of excusable neglect to justify the late filing.

---

[1] On appeal, the Commission's counsel denies that Karl's attorney ever asked or confirmed whether the Commission would file the certified record.

3

¶ 8    After the briefing process, the district court entered an order concluding that the Commission did not lose its jurisdiction, exceed its authority, or abuse its discretion by issuing its final decision and order more than eighty-four days after the briefing before the Commission was completed.  Karl appeals this order and the district court's order denying his motion to certify the record.

## II.    Timeliness of the Commission's Order

### A.    Standard of Review

¶ 9    Under Rule 106(a)(4), we review an agency's quasi-judicial decisions to determine if it has "exceeded its jurisdiction or abused its discretion."  The agency decision that Karl challenges is the issuance of the Commission's final decision and order long after the expiration of the deadline established by Rule 12, section 11(K)(3). The Commission's interpretation and application of that Rule presents an issue of law that we review de novo.  *See Colo. Dep't of Lab. & Emp. v. Esser*, 30 P.3d 189, 194 (Colo. 2001) ("[C]onclusions of law, including interpretations of the constitutions and statutes, are always subject to de novo review."); *Safeway, Inc. v. Indus. Claim Appeals Off.*, 186 P.3d 103, 105 (Colo. App. 2008) ("In construing an administrative rule or regulation, we apply the same

rules of construction as we would in interpreting a statute."

(quoting *Lucero v. Dep't of Insts.*, 942 P.2d 1246, 1249 (Colo. App. 1996))). An agency abuses its discretion when it misapplies the law. *Gallegos v. Garcia*, 155 P.3d 405, 406 (Colo. App. 2006).

## B. The Parties' Arguments

¶ 10 As best we understand his argument on appeal, Karl asserts that under Rule 12, section 11(K)(3), the Commission either exceeded its authority or abused its discretion by issuing its final decision and order more than eighty-four days after the briefing was complete. In its answer brief, the Commission frames Karl's argument as a contention that the Commission lost its jurisdiction to act.

¶ 11 Both in the district court and on appeal, the Commission cites *Shaball v. State Compensation Insurance Authority*, 799 P.2d 399 (Colo. App. 1990), as the analytical framework for its jurisdictional analysis. In rejecting Karl's challenge to the timeliness of the Commission's decision, the district court also viewed the Rule 12, section 11(K)(3), timing issue as a question of jurisdiction and analyzed it through the *Shaball* framework.

¶ 12    In his reply brief on appeal, however, Karl expressly denies that he is making a jurisdictional argument.  Rather, he reiterates that he is arguing that the Commission exceeded its authority and abused its discretion by deciding the appeal after the eighty-four-day deadline.

¶ 13    As a remedy for the asserted violation of the deadline, Karl requested that the district court reverse the Commission's decision.  While less than clear, it seems he was also asking the court to reverse or vacate the hearing officer's decision and reinstate him to his former rank of captain.  This argument is premised on the contention that the factual record and disciplinary matrix did not support his demotion.

        1.    The Commission's Jurisdiction and Authority to Act

¶ 14    Rule 12 addresses disqualification and disciplinary appeals, hearings, and procedures.  Section 11(K)(1) and (K)(3) of Rule 12 provides as follows:

> 1. The Commissioners shall issue a written Decision and Final Order, that shall be binding upon all parties, affirming, reversing, or modifying the Hearing Officer's Decision and Order with respect to any charged violation and any imposed penalty that is a subject of

the appeal. The Commissioners' decision shall be final and is subject to judicial review . . . .

. . . .

3. The Commissioners shall issue their decision no later than eighty-four (84) days after the close of Oral Argument or, if no Oral Argument is held, after the close of the briefing period.

¶ 15    Despite the terms of Rule 12, section 11(K)(3), the Commission did not issue its decision and final order within eighty-four days after the close of the briefing period.

¶ 16    Although we acknowledge Karl's disclaimer, we elect to address the jurisdictional question for three reasons. First, an agency decision is void if it is entered without jurisdiction. *Emmons v. Colo. Dep't of Revenue*, 2020 COA 17, ¶ 32 ("If we find that the Department acted without jurisdiction, we must reverse the district court judgment . . . ."). Second, an appellate court must be satisfied that the reviewing agency had jurisdiction to resolve the disputed issue. *Id.* And third, the district court expressly resolved the jurisdictional question after applying *Shaball,* which we agree provides the most relevant authority for determining if an agency loses the ability to act because a decision was not timely issued.

¶ 17    *Shaball*, like the present case, involved the appeal of a disciplinary action. *See* 799 P.2d at 402. There, the plaintiff argued that the administrative agency "lost jurisdiction when the hearing officer failed to issue a decision" within the timeframe specified by the applicable statute. *Id.* In rejecting the plaintiff's jurisdictional argument, the division held that "[s]tatutory provisions governing the time for actions to be taken by public officials and agencies are not jurisdictional unless a contrary intent is clearly expressed." *Id.* The division explained,

> The crucial difference between statutes considered to be directory and those deemed mandatory arises from the consequence of noncompliance. Failure to follow the former does not terminate the authority of the administrative or judicial body to decide the issue, whereas the failure to follow the latter may terminate its power or jurisdiction.

¶ 18    *Id.*

¶ 19    *Shaball* sets forth three factors for assessing whether a time limit governing the issuance of an agency decision is directory rather than mandatory. *Id.* The first is whether the rule indicates that "time is of the essence" to issue a decision. *Id.* Aside from articulating the timeframe, Rule 12, section 11(K)(3), contains no

indication that time is of the essence in meeting the eighty-four-day deadline.

¶ 20    The second *Shaball* factor is whether the governing statute "contains negative language denying the exercise of authority beyond the time period prescribed for action." 799 P.2d at 402. Section 11(K)(3) of Rule 12 contains no language indicating that an agency loses jurisdiction or its authority to act if its decision is not issued within eighty-four days.

¶ 21    The third *Shaball* factor requires us to consider whether "disregarding the relevant provision would injuriously affect public interests or private rights." 799 P.2d at 402. Certainly, Karl had a personal interest in receiving a timely decision from the Commission. And we appreciate his frustration with the Commission's significant delay in issuing the decision in this case. The Commission's decisions materially impact important aspects of employees' daily lives: Karl's employment status, salary, and retirement benefits remained in limbo while the Commission considered its decision. However, we find no indication that Karl suffered a specific injury from the Commission's delay that could not have been remedied if the Commission had found in his favor.

His title and retirement benefits could have been reinstated, and he could have received backpay.

¶ 22      On a less tangible level, the uncertainty created by the delayed decision likely impacted Karl's work environment and his mental state. But these tensions are inherent in the litigation of all employment actions, and Karl has identified no concrete personal loss that he suffered because of the delay.

¶ 23      Finding none of the three *Shaball* factors satisfied in this case, we conclude that the Commission's delay in issuing its decision did not result in the loss of its jurisdiction or authority to act.

## 2. Abuse of Discretion

¶ 24      Perhaps in view of *Shaball*, Karl's focus in the district court and on appeal is his argument that the Commission abused its discretion by issuing its decision long after the eighty-four-day deadline. An agency abuses its discretion when it misconstrues or misapplies the law or when it makes a decision that is unsupported by competent evidence in the record such that the decision can only be explained as an arbitrary or capricious exercise of authority. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't.*, 196 P.3d

892, 899-900 (Colo. App. 2008) (citing *Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304, 1308-09 (Colo. 1986)).

¶ 25 In rejecting this argument, the district court relied on a decision from a division of this court in *Mayerle v. Civil Service Commission*, 738 P.2d 1198 (Colo. App. 1987). In *Mayerle*, the division rejected the plaintiff's contention that the Commission's five-month delay in issuing its opinion was arbitrary and capricious. *Id.* at 1200 ("Petitioner's argument that the Commission acted arbitrarily and capriciously in rendering its decision five months after the hearing is without merit." (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985))); *Loudermill*, 470 U.S. at 547 (concluding that a nine-month delay in issuing a decision was neither unreasonable nor unconstitutionally lengthy per se). In Karl's case, the seven-month delay falls squarely between the five-month delay in *Mayerle* and the nine-month delay in the case *Mayerle* cites, *Loudermill*.

¶ 26 Karl relies heavily on *Rags Over the Arkansas River, Inc. v. Colorado Parks & Wildlife Board*, 2015 COA 11M, to support his argument that the Commission exceeded its authority by not adhering to the eighty-four-day deadline. In *Rags*, the Colorado

11

Parks and Outdoor Recreation Board delayed issuing a permit that would have allowed the plaintiff to create an outdoor artistic feature over the Arkansas River. *Id.* at ¶ 5. Thus, *Rags* involved an agency's failure to follows its own rules governing the issuance of a special activities permit. *Id.* at ¶ 66. The division concluded that the agency's failure to follow its own regulations in the permitting process was error, but that any error was harmless. *Id.* at ¶ 64.

¶ 27    Karl's contention is that the Commission's failure to issue a timely decision was an abuse of discretion. This is so, he argues, because the language of Rule 12, section 11(K)(3), is mandatory rather than directive. But *Rags* does not provide an analytic framework for deciding when a deadline to issue a decision is mandatory rather than directive. That framework is provided by *Shaball.* 799 P.2d at 402. And for the reasons previously articulated, the application of *Shaball*'s three factors leads to the conclusion that Rule 12's eighty-four-day deadline is directive rather than mandatory.

¶ 28    Karl relies on various nonbinding decisions from other jurisdictions to argue that the word "shall" in Rule 12, section 11(K)(3), imposes a mandatory deadline. *See, e.g., Mohasco Corp. v.*

*Silver*, 447 U.S. 807, 825-26 (1980) (concluding that deadline for filing unfair employment practices claim is mandatory); *In re Comp. of Pena*, 432 P.3d 382, 386 (Or. Ct. App. 2018) (concluding that the Worker's Compensation Division misapplied its own rules and reversing decision that failed to follow the rule).

¶ 29    But these decisions are based on statutes or rules not at issue here.  Moreover, Karl cites no analytic framework that displaces the *Shaball* factors in assessing whether an agency rule that establishes a deadline for the issuance of a decision is mandatory or directive.  Similarly, he provides no framework by which we are to determine when a delay in the issuance of a decision rises to the level of arbitrary or capricious conduct.

¶ 30    In the absence of such authority, we conclude that the Commission did not act arbitrarily or capriciously by issuing its decision after the eighty-four-day deadline.

¶ 31    But even if we assume there was error, such error would not justify either remedy that Karl requests.  Karl effectively proposes two remedies.  First, he suggests that we should vacate the Commission's decision because of its untimeliness and vacate the hearing officer's decision, reinstating his original position as

captain. Alternatively, he argues that we should reverse the district court's order denying his motion to certify the record and remand this matter with instructions that the district court review the record and reconsider the merits of the Commission's decision. The first remedy is well outside our authority. The second would only be possible if we found the district court had erred in denying Karl's motion to certify the record. But as explained below, we conclude that the district court did not err by denying the motion to certify the record.

### III. Denial of the Motion to Certify Record

¶ 32 Karl argues that the district court abused its discretion by denying his motion to certify the record. He asks that the case be remanded to the district court with instructions to allow him to submit a certified record, so the district court can evaluate the merits of the Commission's decision.

### A. Standard of Review

¶ 33 We review the district court's decision whether to grant a tardy motion for an abuse of discretion. *See Brown v. Walker Com., Inc.,* 2022 CO 57, ¶ 19-20 (concluding that trial courts have broad latitude to allow untimely filings under the provisions of Rule

14

6(b)(2)).  "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law."  *Adams Cnty. Hous. Auth. v. Panzlau,* 2022 COA 148, ¶ 17 (quoting *Black v. Black,* 2020 CO 64M, ¶ 118).

## B.    Analysis

¶ 34     The district court's order denying Karl's motion adopted by reference the arguments made in the Commission's response to Karl's motion to certify the record.  In its response, the Commission argued Karl failed to demonstrate "good cause or excusable neglect" for the delay in filing the motion.  The Commission also noted that in response to the district court's inquiry, Karl represented that there was no request to certify the record and that the case was ripe for setting the briefing schedule.

¶ 35     In his reply to the Commission's response, Karl argued that he didn't timely file a motion to certify because in a previous case involving the same attorneys, defense counsel provided a certified copy of the record even though Karl's counsel had not filed a motion to certify.  Aside from this one alleged incident — the circumstances of which are not documented or further explained — there is nothing in the record to indicate an established relationship or

15

practice between counsel that would justify Karl assuming that there was no need file a motion to certify in this case.

¶ 36     On appeal, Karl offers the same justification for his belated filing: in one prior Rule 106 case with defense counsel, the city attorney had filed a record even though Karl's attorney had not filed a motion to certify, and he assumed the same practice would be followed in this case.

¶ 37     As an initial matter, we note that Karl's counsel first raised this argument in his reply brief filed in the district court.  Generally, we do not consider arguments raised for the first time in a reply brief.  *See Flagstaff Enters. Constr., Inc. v. Snow*, 908 P.2d 1183, 1185 (Colo. App. 1995) (it is not error for a trial court not to consider arguments raised for the first time in a reply brief).  But even if we assume the argument was adequately preserved, we conclude it fails on the merits.

¶ 38     Neither before the district court nor on appeal does Karl point to an established practice between counsel, or an express representation from opposing counsel, that would justify his assumption that he could ignore the requirements of Rule 106(a)(4)(III) and (IV).  Moreover, a party is not free to disregard a

deadline absent permission of the tribunal, and there is nothing in the record suggesting that the district court agreed to such practice.

¶ 39　In addition to these omissions, Karl affirmatively represented to the district court that there was no motion to certify the record outstanding and that the parties were ready for a briefing schedule. Noting that "a certified record has not been requested," the district court entered its order setting forth the deadlines for the parties' briefs on appeal. Even then, Karl did not file his motion to certify until more than a month later, seven days before his opening brief was due. And in his reply brief concerning the motion to certify, Karl stated that the filing of his opening brief "probably rendered moot" the issue of record certification because he "was able to file his brief without a certification of record."

¶ 40　Karl lastly contends that his motion to certify should not be treated as untimely because C.R.C.P. 106(a)(4) does not set forth an express deadline for filing a motion to certify. Similarly, he contends that any delay was inconsequential because he filed the motion before the deadline for filing his opening brief. We disagree.

¶ 41　Rule 106(a)(4)(III) contemplates the filing of a motion to certify contemporaneously with the complaint. If no record is requested,

an opening brief is due within forty-two days of the answer. C.R.C.P. 106(a)(4)(VII). Karl's opening brief was already significantly past due before the court's clerk contacted him to inquire about its status. And when he stated that no record was requested, the court set a deadline for filing the opening brief. After another thirty-five days had expired, Karl filed the motion to certify seven days before the deadline for his opening brief. If the motion had been granted, it would have delayed the briefing until the record could be prepared and filed. This would have required a new briefing schedule and caused additional delay in resolving the case.

¶ 42    Given these facts, we cannot conclude that the district court abused its discretion by denying Karl's untimely motion to certify the record.

## IV. Disposition

¶ 43    The district court's orders denying the motion to certify the record and affirming the Commission's final decision and order are affirmed.

JUDGE TOW and JUDGE PAWAR concur.

18